## Board of Education of Ferguson Independent Graded School Dist. v. Elliott.

Feb. 14, 1939.

WALTER N. FLIPPIN for appellant.

. J. BETHURUM and CHARLES N. HOBSON for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

This is an action by George L. Elliott against the Board of Education of Ferguson Independent Graded School District of Pulaski County on an alleged contract, by the terms of which he was to prepare and furnish to the Board of Education plans and specifications for a school building which the board proposed to construct. The case was submitted to a jury and it returned a verdict against the defendant for the sum of $864, the amount claimed in the plaintiff's petition. Judgment was entered thereon, and the defendant has appealed.

During the summer of 1935 negotiations were entered into by the Board of Education and the Works Progress Administration, a Federal Agency, which culminated in an offer by the latter to advance to the board 45 per cent. of the cost of constructing the proposed building. This offer was presented to the board in writing, with a request that they have a called meeting for the purpose of taking action thereon. The chairman of the Board of Education issued a written call for a special meeting of the board on October 28, 1935, which specified that the meeting was called for the purpose of taking action upon the offer of the Works Progress Administration to furnish 45 per cent. of the cost of constructing the building. All of the members of the board received the notice, and all of them were present at the meeting. A resolution accepting the offer of the Works Progress Administration was adopted and spread on the records of the board. During the meeting George L. Elliott presented the written contract, which is the basis of this action. By the terms of the contract he was to be employed as the architect to prepare preliminary studies, working drawings, specifications, large scale and full size detail drawings, draft form of proposals and contracts, issue certificates of payment, and have general supervision of the work of construction. For such services he was to receive a fee of 6 per cent. of the

cost of the work, and the cost of transportation and living incurred by him and his assistants while traveling in discharge of duties connected with the work. The contract was signed by the chairman and secretary of the board and by Elliott, but no reference to the contract appears in the minutes of the board. Elliott testified that members of the board voted unanimously at the meeting to employ him as architect, and that thereupon the contract was signed by the chairman and the secretary. The members of the board testified that no official action was taken in reference to the contract, but they admitted that the matter was discussed at the meeting and they knew the contract was signed by the chairman and the secretary of the board. They testified, however, that Elliott stated that the signing of the contract was a mere matter of form, since the Works Progress Administration would not advance any money to the board until it had entered into a written contract with an architect, and that the contract would not be binding upon the board in the event the building was not constructed. Elliott was not an architect, but he did have plans and specifications prepared by a licensed architect of Louisville, Kentucky. He presented them to the board, and it refused to accept them or to pay him the fee specified in the contract. Thereupon he brought this action.

It appears that the plan to construct the school building was abandoned, probably because the Board of Education was unable to raise its part of the construction costs. The defendant, in its answer, denied that it executed or entered into the contract sued upon, or that it ever authorized or empowered any person or persons to make such contract in its behalf, or that it ever ratified or approved the execution of the contract. In paragraph 2 of the answer, it alleged that if the contract relied upon by plaintiff was in fact entered into by and between plaintiff and defendant same was null and void because it violated chapter 168 of the Acts of the General Assembly of 1930, Sections 73-1 to 73-15, inclusive, Kentucky Statutes, which prohibits any person from performing services as an architect unless he has procured from the Board of Examiners and Registration of Architects of Kentucky a license authorizing him so to do, as required by said act. It was alleged that the plaintiff was not an architect and had not procured a license to practice architecture in this state, and had not registered as an architect as required by the act. A de-

murrer to this paragraph of the answer was sustained. A number of grounds are relied upon for a reversal of the judgment, but, since we have concluded that paragraph 2 of the defendant's answer presented a good defense and that the court erred in overruling a demurrer thereto, it is unnecessary to consider the other grounds.

The second paragraph of the answer avers that at the time the contract was made and at the time when the plaintiff commenced his performance under it he was not licensed as an architect as required by chapter 168 of the Acts of 1930, now chapter 6a of the Kentucky Statutes. The title of the Act reads:

"An Act creating a State Board of Examiners and Registration of Architects, prescribing its powers and duties providing for examinations and issuing certificates to qualified registered architects or architects and providing for penalties for violation of the provisions of the Act."

Section 1 of the Act reads:

"That in order to safeguard life, health and property, and to promote public welfare by requiring that only properly qualified persons shall practice architecture in this State, and such person shall be required to submit evidence that he or she is qualified to practice and shall be registered as hereinafter provided."

Section 11 of the act provides that all fees for examinations, for certificates of registration, and for the annual renewal thereof shall be paid into the treasury of the Board of Registration of Architects of Kentucky for the purpose of defraying the expenses of the board. Section 14 makes a violation of the act a misdemeanor punishable by fine or imprisonment or both. The state treasury receives none of the license fees. The Act is not a revenue measure, but purely a police measure intended, as stated therein, to safeguard life, health, and property, and to promote public welfare by requiring that only properly qualified persons shall practice architecture in this state. While the practice of architecture is a legitimate occupation and cannot be suppressed like certain occupations that may adversely affect the health or morals of a community unless strictly regulated under the police power, yet it so vitally affects life, health and public welfare as to require regulation for the protection of the general public The most effec-

tive regulation is that afforded by the Act in question, to-wit: prohibiting unqualified persons from practicing architecture. A distinction is recognized between statutes enacted under the police power for the protection of the public, and statutes designed for the raising of revenue. In the case of a statute which was enacted for the sole purpose of raising revenue a contract ordinarily will not be declared void for non-compliance with the Act, unless an intention by the Legislature to render it void is manifested by the language of the statute. It is recognized everywhere that when a statute requiring a license as a requisite for one practicing a particular profession or for the carrying on of a particular trade or business has been enacted for the protection of the public, an agreement without such a license is void. Baskett v. Jones, 189 Ky. 391, 225 S. W. 158; Smith v. Robertson, 106 Ky. 472, 50 S. W. 852, 20 Ky. Law Rep. 1959, 45 L. R. A. 510; annotations in 42 A. L. R. 1226, and 30 A. L. R. 834; Restatement of the Law of Contracts, section 580, page 1087; 13 C. J. 423. The rule is thus stated in 17 R. C. L. 560:

"It seems to be a general doctrine now well settled by the authorities that when the object of the statute or ordinance in requiring a license for the privilege of carrying on a certain business is to prevent improper persons from engaging in that particular business, or is for the purpose of regulating it for the protection of the public or in the interest of public morals, health, or police, the imposition of the penalty amounts to a prohibition against doing the business without a license, and a contract made by an unlicensed person in violation of the statute or ordinance is void."

In Howard v. Lebby, 197 Ky. 324, 246 S. W. 828, 829, 30 A. L. R. 830, this court said:

"The test is, what was the intention of the enacting authority? If the license is authorized under the police power and may be granted or withheld by the municipality in the interest of the public health, morals, or welfare, then a contract made by one who has not procured a license is void, because as to him the pursuing of the occupation is illegal; but if the tax is imposed as a revenue measure only, without restriction as to the kind or class of persons entitled to a license, and necessarily, therefore, without re-

lation to the public health, morals or welfare, the infraction of the ordinance consists, not in pursuing the occupation, but in failing to pay the license fee before pursuing it."

In the following cases a contract, by one who, without license, held himself out as an architect, was held to be void where a statute required architects to secure a license to practice their profession, and imposed a penalty for failure to do so. Sherwood v. Wise, 132 Wash. 295, 232 P. 309, 42 A. L. R. 1219; Wedgewood v. Jorgens, 190 Mich. 620, 157 N. W. 360; Hickey v. Sutton, 191 Wis. 313, 210 N. W. 704; Keenan v. Tuma, 240 Ill. App. 448; Payne v. De Vaughn, 77 Cal. App. 399, 246 P. 1069. At one time this court held void contracts in which sections 199b-1 and 571 of the Statutes had not been complied with in cases where those statutes applied. Section 199b-1 requires all persons doing business under an assumed name to file in the clerk's office a statement of the name under which the business is to be carried on, and the names of the persons engaged in such business, and section 571 requires all corporations, except foreign insurance companies, to file in the office of the Secretary of State a statement giving the location of its office or offices in this state, and the name or names of its agent or agents thereat upon whom process can be served. In Hayes v. Providence Citizens' Bank & Trust Company, 218 Ky. 128, 290 S. W. 1028, 59 A. L. R. 450, and Williams v. Dearborn Truck Co., 218 Ky. 271, 291 S. W. 388, the earlier decisions holding such contracts void were overruled, and it was held that failure to comply with Sections 199b-1 and 571 of the Statutes does not preclude one charged with such compliance, who fails to do so, from maintaining an action. Appellee relies upon these cases in support of his contention that a contract to act as an architect is enforceable, though the person agreeing to perform the services of an architect has not complied with the provisions of chapter 6a of the Kentucky Statutes by obtaining a license. The statutes construed in the Hayes and Williams cases differ materially from the Architects Registration Act, and those cases are not controlling here. Even if it be conceded that Sections 199b-1 and 571 were enacted under the police power, they were not enacted for the purpose of safeguarding life or health or for the purpose of promoting the public welfare. The purpose of Section 199b-1 of the Statutes is merely to establish the identity

of individuals owning the business for the information of those who may have dealings with the concern, and the purpose of section 571 is to provide some known designated person upon whom process can be served so as to bring the corporation before the courts of this state which may have jurisdiction of suits against it. No question of health, safety, morals, or public welfare is involved. On the other hand, the chief purpose of the Architects Registration Act is to safeguard life, health and property and to promote public welfare, and one assuming to act as an architect, who has not procured a license, cannot, under the rule universally recognized, maintain an action to enforce a contract for services rendered by him as an architect.

The judgment is reversed, with directions to overrule the demurrer to paragraph 2 of the answer, and for further proceedings, consistent herewith.