**DOW et al. v. UNITED STATES, for Use and Benefit of HOLLEY.**

No. 3170.

Circuit Court of Appeals, Tenth Circuit.

March 16, 1946.

---

708

Arthur E. Moreton, of Salt Lake City, Utah (John E. McCall, of Los Angeles, Cal., and E. R. Christensen, of Salt Lake City, Utah, on the brief), for appellants.

Gordon R. Strong, of Salt Lake City, Utah (Benjamin L. Rich, of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

The United States awarded to R. H. Dow, engaged in business under the trade name of L. F. Dow Company, a prime contract for the construction of six warehouses at an army air base near Ogden, Utah; and a bond was executed and delivered, conditioned as required by the so-called Miller Act, 49 Stat. 793, 40 U.S.C.A. § 270a et seq. Dow entered into a subcontract with Ben J. Holley for the performance of that part of the work referred to as footing excavation. The contract provided that Holley should be compensated at the rate of fifty cents per cubic yard, bank measurements, for earth excavated and moved. Holley completed the work and certain payments were made, but a controversy arose as to whether there was a balance due. This action was instituted in the name of the United States for the use and benefit of Holley against Dow and the sureties on the bond. The complaint, as finally amended, was in three causes of action. The first cause was to recover the balance alleged to be due for the work done under the subcontract; the second was to recover for gravel furnished; and the third was to recover for rental of a dragline. By answer, it was pleaded that the subcontract obligated Holley to perform the excavation work according to the plans and specifications; that the subcontract provided that overcuts from lines would not be measured for payment; that Holley did overcut; and that the overcut was not to be included in the measurements for payment. By cross complaint, it was pleaded that due to Holley's negligent and careless overcutting, Dow was obliged to backfill and tamp certain material and to pour additional cement, all at extra outlays of labor and material; and recovery was sought accordingly. No issue was presented at the trial in respect of the second and third causes of action. In respect of the first cause and the cross complaint, the court submitted to the jury the issue of fact whether Holley in the performance of the work under the subcontract did overcut, and if so whether as the reasonable consequence Dow was subjected to additional outlays of labor and material. Plaintiff prevailed and defendants appealed.

The first contention is that under the terms of the subcontract and the plans and specifications, Holley was not entitled to recover and that there was no issue properly for submission to the jury. The

argument in support of this contention is that the subcontract obligated Holley to perform his work in accordance with the plans and specifications; that the plans and specifications contemplated the cutting of the banks or sides of the trenches vertically; and that Holley did not cut them in that manner but cut them on a one-to-one slope which resulted in excavating and moving more earth than was contemplated. The subcontract did provide that the work done under it should conform strictly to the plans and specifications. But it also provided that the work should be done "as directed, and to conform strictly to lines and grades furnished by the contractor." And it further provided that the subcontractor should "perform his work as directed by the Contractor and/or the Owners representative, and in accordance with the plans, specifications * * *." The specifications provided that "The depth of foundations, footings, and trenches shall be as indicated on the drawings or specified * * *." And they further provided that "excavation for structures shall be of sufficient size to permit installing and removing forms, to allow the various trades to make their installations, and to permit inspection." There was testimony that when Holley was ready to begin his work, the general superintendent in charge for Dow introduced him to the general foreman and told him that he would take all orders from the foreman; that the foreman caused four stakes in a line to be placed on the ground at intervals of approximately 100 feet; that the inside or toe stakes indicated the bottom width of the excavation, and the outside or slope stakes indicated the slope on which the excavation was to be dug; that when the work first started, the slope stakes were set on a half-to-one slope, meaning that for every foot of excavation there should be a cut of six inches into the bank; that after a few hundred feet had been cut in that manner, the ground caved in so badly that the foreman called Holley back and had him clean it out and widen the slope over the whole area to a one-to-one slope; and that thereafter throughout the entire progress of the work, the foreman caused the stakes to be set on a one-to-one minimum slope, which meant that for every foot of excavation there should be cut one foot into the bank. There was testimony that the foreman furnished Holley with two templets or gauges and directed him to use them frequently in the progress of the work. There was further testimony that the work was done in strict accord with the stakes thus set and the templets or gauges thus furnished. And there was countervailing testimony. The evidence presented a sharp issue of fact as to whether the foreman for Dow set slope stakes, furnished templets, or gauges, and directed that the work be done in accordance with them. But in a case of this kind, contradictions and conflicts of evidence are for the jury, and where the evidence and the inferences fairly to be drawn from it are such that reasonable minds may honestly draw different conclusions from them, the issue should be submitted to the jury. The credibility of the witnesses, the inferences fairly to be drawn from the proven facts, and the weight to be accorded to the various parts of the evidence were matters exclusively for the jury. There was substantial evidence leading to the conclusion reached by the jury upon the issue of fact in controversy and it is not our privilege to interfere with the finding.

■ Since the subcontract provided among other things that the work should be done as directed by the contractor and should conform strictly to lines and grades furnished by him, and since the jury found with warrant in the evidence that the contractor set slope stakes, furnished templets or gauges, and directed that the work be done on the basis of them, it cannot be said that as a matter of law the subcontractor is foreclosed from recovering for the earth removed from the slope because it was a departure from the strict letter of the plans and specifications.

■ Error is predicated upon the action of the court in admitting certain testimony. Holley testified that during the course of the work, he asked the general superintendent of Dow to make an estimate or to measure the amount of the yardage which he was excavating; that Stowe, chief surveyor on the project for the army engineers, made a computation; that Labar, an employee of Dow, was present at the time of the making of the computation; and that Labar told Holley "they had checked the yardage, that it was 29,784 yards, exclusive of the fire walls, and that was the amount I would be paid for." Stowe testified that Labar and other employees of Dow were present at the time he made the computation; that they helped him figure it; and that Labar told Holley that "was

the basis he would be paid on," meaning the yardage as computed by Stowe. It is argued that no foundation had been laid for the testimony in that it was not shown that Labar had authority to make such a statement on behalf of Dow. The record fails to make clear the position which Labar occupied. Dow testified that he was employed as a coordinator, to coordinate the trades on the job. Youngberg, employed by Dow as architect to see that everything done by the Dow Company and the subcontractors was done in strict accord with the plans and specifications, testified that Labar was a field superintendent; and he also referred to Labar as the superintendent in charge of the particular section of the work which included the excavation. And Holley in his testimony referred to Labar as superintendent for the Dow Company. In any event, according to the record before us, only a general objection was interposed to the testimony. No ground was pointed out or specified. And where no reason or ground for an objection to evidence is specified or assigned and none is so manifest that the trial court could fail to understand it, the objection comes to nothing and the court is warranted in disregarding it. Camden v. Doremus, 3 How. 515, 11 L.Ed. 705; Burton v. Driggs, 20 Wall. 125, 126, 22 L.Ed. 299; Prudential Insurance Co. of America v. Faulkner, 10 Cir., 68 F.2d 676, 94 A.L.R. 1160.

■■ The remaining question concerns itself with the right of Holley to maintain the action. At the time the subcontract was entered into and at the time the work was done under it, he did not have a license issued by the state of Utah authorizing him to engage in the trade or occupation of a contractor. Title 79, Utah Code 1943, has reference generally to licenses issued by the Department of Registration for engaging in certain businesses or professions. Section 79—1—38 provides that it shall be unlawful for any person to practice or engage in the practice of any profession, trade, or occupation subject to the department without authority so to do as provided in the title. Section 79—5a—1 makes it unlawful for any person, firm, copartnership, corporation, association, or other organization to engage in the business or act in the capacity of contractor within the state without having a license therefor as therein provided, unless such person, firm, corporation, association, or other organiza-

tion is particularly exempted by the act. Section 79—5a—2 provides certain exemptions but they do not have bearing here. The presently material part of section 79—5a—3 provides that a contractor shall include any person who for a fixed sum or price, other than wages, undertakes for another any excavation, and that the term contractor, as used in the act, shall include subcontractor. Section 79—5a—4 deals with the making of applications for licenses as a contractor and the issuance of such licenses. And section 79—5a—10 provides a penalty for acting in the capacity of a contractor without having a license. Neither these statutory provisions nor any others called to our attention provide in express language that a contract employing an unlicensed contractor to perform services falling within the field of his trade shall be unenforceable. But the statutory requirement to obtain a license before engaging in the trade is a police regulation for the protection of the public, Smith v. American Packing & Provision Co., 102 Utah 351, 130 P.2d 951; a penalty is provided for the violation of the statutory exaction; and it is the well settled general rule that in ordinary circumstances, a contract entered into by an unlicensed person in contravention of the statutory provisions of this kind will not be enforced. Wedgewood v. Jorgens, 190 Mich. 620, 157 N.W. 360; Hickey v. Sutton, 191 Wis. 313, 210 N.W. 704; Sherwood v. Wise, 132 Wash. 295, 232 P. 309, 42 A.L.R. 1219; Lund v. Bruflat, 159 Wash. 89, 292 P. 112; American Store Equipment & Construction Corporation v. Jack Dempsey's Punch Bowl, Inc., 283 N.Y. 601, 28 N.E.2d 23; Massie v. Dudley, 173 Va. 42, 3 S.E.2d 176; Board of Education v. Elliott, 276 Ky. 790, 125 S.W.2d 733.

■ But that general rule does not have application in a case of this kind in which an unlicensed member of a profession or trade seeks to recover from a licensed member for services rendered or labor performed pursuant to a contract entered into by them. Martindale v. Shaba, 51 Okl. 670, 151 P. 1019; White v. Little, 131 Okl. 132, 268 P. 221; Ferris v. Snively, 172 Wash. 167, 19 P.2d 942, 90 A.L.R. 278; Cf. John E. Rosasco Creameries v. Cohen, 276 N.Y. 274, 11 N.E.2d 908, 118 A.L.R. 641. Moreover, here the primary contract obligated Dow to construct the buildings, including the excavating for the footings. He could do all of the work himself or let

some of it to subcontractors. The subcontract let to Holley was illegal, but he has completed the work under it. The prime contract also has been completed, and Dow has received from the United States payment in full for the buildings, including the amount attributable under such contract to the excavating for the footings. Both contracts having been completed and Dow having received payment in full, it would not further the letter or the spirit of the law to allow him to escape liability for the unpaid balance due Holley by asserting the illegality of the subcontract. Cf. Brooks v. Martin, 2 Wall. 70, 17 L.Ed. 732; Overholt v. Burbridge, 28 Utah 408, 79 P. 561.

The judgment is affirmed.