Milton **COSTELLO**, Appellant,

v.

Emil A. **SCHMIDLIN**, Defendant and Third-Party Plaintiff,

v.

The **TOWNSHIP OF MAPLEWOOD**, a Municipal Corporation of the State of New Jersey, Third-Party Defendant.

No. 17065.

United States Court of Appeals Third Circuit.

Argued May 23, 1968.

Decided Nov. 1, 1968.

Israel G. Seeger, Miller & Seeger, New York City, for appellant.

Peter N. Perretti, Jr., Riker, Danzig, Scherer & Brown, Newark, N. J., for defendant and third party plaintiff-appellee.

Alfred I. Manson, Jr., Newark, N. J., for third party defendant-appellee, on the brief.

Before HASTIE, Chief Judge, and KALODNER and STALEY, Circuit Judges.

## OPINION OF THE COURT

KALODNER, Circuit Judge.

Is a professional engineer's claim for consulting engineering services, rendered in New Jersey, to a New Jersey licensed architect, pursuant to contract, unenforceable as a matter of law by reason of the fact that the claimant was not licensed by the State of New Jersey as a professional engineer under N.J.S.A. 45:8–27 et seq.?

The District Court, in the instant diversity action, first answered the question in the negative in its Oral Decision at the conclusion of a three-day non-jury trial, and then answered it in the affirmative in a written Opinion presently unreported. This appeal followed.

The facts relevant to our disposition may be stated as follows:

The plaintiff, Milton Costello, is a professional engineer, specializing in the design and supervision of construction of swimming pools. He is licensed as a professional engineer in New York, where he resides and has his place of business, and in the states of Maryland, Illinois, and New Mexico. He is not licensed as a professional engineer in New Jersey.

The defendant, Emil A. Schmidlin, resides and has his place of business in New Jersey and is a licensed architect in that State.

The third-party defendant, the Township of Maplewood, is a New Jersey municipality.

On August 18, 1965, defendant entered into a written contract with the Township for the installation and construction of a municipal swimming pool complex. At the Township's request, he thereafter, in October 1965, entered into a written contract with plaintiff for his performance of certain engineering and other services in connection with the swimming pool project. This contract provided as follows: plaintiff would receive $15,000 as compensation; $3,000 as a retainer; $6,000 upon completion of plans; $3,000 upon award of contract or 60 days after issuance of plans and specifications for bidding, whichever occurred earlier; and $3,000 progress payments, pro rata, during the course of construction.

The Township, by a Supplemental Contract with defendant, agreed to reimburse him for one-half of plaintiff's $15,000 compensation. In accordance with that contract it reimbursed defendant for one-half of the $3,000 retainer fee he paid to plaintiff.

The plaintiff-defendant contract was captioned "Consulting Engineering Services Agreement." It expressly stated that defendant had a contract with the Township for furnishing complete professional services with respect to the construction of the swimming pool project, and that plaintiff's relationship to defendant should " * * * at all times be that of an Associate Consultant * * *." It described defendant as "Client" of plaintiff and stated that " * * * the Client shall, without limit, have final right of review and approval of all plans and specifications which shall be the essence of this contract."

The plans and specifications were completed and issued for bidding on January 12, 1966, and plaintiff, the next day, unsuccessfully billed defendant for the $6,000 which then became due, in accordance with the provisions of their contract. When the bids were received they were substantially higher than the Township's estimate and available funds, and plaintiff was requested by defendant to revise the plans and specifications to fit the available appropriation in con-

templation of a re-invitation for bids. Plaintiff, in collaboration with defendant's staff, prepared and submitted changes to that end. During the preparation of these revisions, the Township invited plaintiff to attend a meeting of its governing body at which a different type of pool was considered and recommended by the Township's governing body and engineer. Plaintiff disapproved the suggested substitute but it was nevertheless approved and the bid of the manufacturer of the substituted pool was accepted by the Township.

On March 12, 1966, plaintiff unsuccessfully billed defendant for the $3,000 payment due 60 days after the issuance, on January 12, 1966, of the plans and specifications for bidding. Later, he billed defendant for the unpaid installments of $6,000 and $3,000 due on his contract, and an additional $8,000 for professional services not called for in the contract. Still later, he submitted an additional bill for the $3,000 final payment provided by his contract.

None of the stated bills were paid, and plaintiff then instituted the instant action against the defendant for the $12,000 billed under his contract and for $8,000 extra services.

Defendant, in his "Answer and Counterclaim" alleged that "plaintiff was in fact not able, competent, duly qualified and licensed to perform" the services specified by his contract, and that he "did not in fact perform in accordance with all of the material terms and conditions of his agreement." He also filed a two-count counterclaim against plaintiff; in Count I he sought recovery of the $3,000 retainer fee paid to plaintiff, and in Count II he claimed plaintiff owed him $12,000 for services rendered to plaintiff which he alleged were plaintiff's responsibility under their contract.

Defendant also filed a third-party complaint against the Township alleging therein that if he were held liable to plaintiff for the $12,000 contractual balance, Township was liable to him for one-half of that amount under the Township-defendant contract.

Defendant's evidence at the trial established the plaintiff's billings pursuant to his contract had not been paid only because Township had not prior thereto paid defendant, even though their payment had not been conditioned by the contract upon Township's prior payment to defendant.

In its oral judgment, at the conclusion of the testimony, the District Court, after ruling that plaintiff was not barred by New Jersey law from prosecuting his action, awarded him a judgment of $9,000 which it found was due him under his contract, and an additional $350, in *quantum meruit*, for work done on revisions of plans.

In its subsequent written Opinion, the District Court ruled that the plaintiff-defendant contract was "unenforcible [sic] here as contrary to the laws of New Jersey" by reason of the fact that plaintiff did not have a New Jersey professional engineer's license, and held *seriatim* (1) plaintiff could not maintain his action; (2) defendant was entitled to recover the $3,000 retainer he had paid plaintiff; and (3) "with respect to the second count of defendant's counterclaim against plaintiff [for $12,-000], there is an absence of evidence supportive of any right to recover thereunder."

In its "Order for Judgment" the District Court (1) entered judgment, with costs, in favor of defendant and against plaintiff, and dismissed plaintiff's complaint "with prejudice"; (2) entered judgment in favor of the third-party defendant Township against defendant, and dismissed the latter's third party complaint "with prejudice"; (3) entered judgment in favor of defendant against plaintiff on the first count of defendant's counterclaim in the sum of $3,000, with interest; and (4) dismissed the second count of defendant's counterclaim against plaintiff.

On this appeal, plaintiff contends that the District Court erred in ruling that he is barred from any recovery for his services as consulting professional engineer because he was not licensed as a

professional engineer in New Jersey, and asks that the District Court's oral judgment in his favor in the amount of $9,350, announced from the bench at the conclusion of the trial, should be reinstated.

Defendant contends to the contrary, and urges affirmance of the District Court's final Order of Judgment, earlier stated.

What has been said brings us to the question as to whether plaintiff's action was unenforceable as a matter of law under the prevailing facts by reason of the circumstance that he was not licensed by the State of New Jersey as a professional engineer under N.J.S.A. 45:8-27 et seq.

Insofar as here relevant, the cited statute provides as follows:

## PROFESSIONS AND OCCUPATIONS

"45:8–27. License required; display of license; exception; corporations, firms, partnerships and associations

In order to safeguard life, health and property, and promote the public welfare, any person practicing or offering to practice professional engineering or land surveying in this State shall hereafter be required to submit evidence that he is qualified so to practice and shall be licensed as hereinafter provided. After the date upon which this chapter becomes effective, it shall be unlawful for any person to practice or to offer to practice professional engineering or land surveying in this State, or to use the title professional engineer or land surveyor or any other title, sign, card or device in such manner as to tend to convey the impression that such person is practicing professional engineering or land surveying or is a professional engineer or land surveyor, unless such person is duly licensed under the provisions of this chapter. Every holder of a license shall display it in a conspicuous place in his principal office, place of business or employment.

\* \* \* \* \* \*

"45:8–28. Definitions

(a) The term 'professional engineer' within the meaning and intent of this chapter shall mean a person who by reason of his special knowledge of the mathematical and physical sciences and the principles and methods of engineering analysis and design, acquired by professional education and practical experience, is qualified to practice professional engineering as hereinafter defined as attested by his license as a professional engineer.

(b) The terms 'practice of engineering' or 'professional engineering' within the meaning and intent of this chapter shall mean any professional service or creative work requiring engineering education, training, and experience and the application of special knowledge of the mathematical, physical and engineering sciences to such professional services or creative work as consultation, investigation, evaluation, planning, design or general supervision of construction or operation for the purpose of assuring compliance with plans, specification and design in connection with any public or private engineering or industrial project. The practice of professional engineering shall not include the work ordinarily performed by persons who operate or maintain machinery or equipment. The provisions of this chapter shall not be construed to prevent or affect the employment of architects in connection with engineering projects within the scope of the act to regulate the practice of architecture and all the amendments and supplements thereto."

The District Court in its written opinion held that the cited provisions of the New Jersey statute barred plaintiff's action. In so doing it said:

" \* \* \* [S]ection 45:8–28, defines the term 'professional engineer', and the terms 'practice of engineering' or 'professional engineering' to include the plaintiff in this action and the

services which he contracted to perform. In George H. Weinrott & Co. v. Burlington Housing Corp., 22 N.J. Super. 91, 91 A.2d 660 (Chan.Div. 1952) the Superior Court of New Jersey construed the statute as precluding the recovery of judgment for engineering services rendered by a person not duly licensed thereunder."

In so ruling, the District Court did not advert to its earlier contrary construction of the New Jersey licensing statute, when it denied motions of Township and defendant for dismissal of plaintiff's complaint at the close of all the evidence, and rendered its oral decision announcing that " * * * there will be a judgment in favor of the plaintiff and against the defendant Schmidlin for nine thousand, three hundred and fifty dollars, of which the Township of Maplewood will be obligated to Schmidlin to reimburse to the extent of fifty per cent."

In preface of the foregoing oral disposition, the District Court stated that upon consideration of an "analogous" issue presented in Magasiny v. Precision Specialties, Inc., 91 N.J. Super. 546, 221 A.2d 755 (1966):

"I have concluded * * * that the conceded failure of the plaintiff to secure and possess a New Jersey professional engineer's license does not preclude his recovery in this cause."

This must immediately be said with respect to Weinrott and Magasiny, respectively relied on by the District Court in its conflicting written and oral dispositions.

First, neither case presented the issue here, viz., whether failure to comply with New Jersey's licensing statute bars a professional engineer, elsewhere licensed, from maintaining an action for consulting engineering services rendered in New Jersey to an architect licensed therein.

Second, counsel for the parties have not cited to us, nor has our research disclosed, any other New Jersey case which has ruled on the stated issue.

That being so, we are required to consider such approach to the problem as may be indicated by the New Jersey cases in the general field and to resort to general applicable principles to reach a conclusion consistent with New Jersey law. In sum, it is incumbent on us to make our own determination of what the New Jersey Supreme Court would probably rule in a similar case. Our experience in the past has demonstrated that this may well be described as a "hazardous occupation."

We first direct our attention to *Weinrott,* on which the District Court relied for its final holding that plaintiff is precluded as a matter of law from maintaining the instant action.

In *Weinrott,* the plaintiff, a Pennsylvania corporation, sought to recover commissions for placing mortgages on real estate, and compensation for engineering services rendered in the State of New Jersey. The plaintiff corporation and its president were not licensed as a real estate broker or as a professionl engineer in New Jersey or any other state. The New Jersey Chancery Court held that since plaintiff was not licensed as a real estate broker it could not sue for a brokerage commission and that it could not maintain an action for compensation as a professional engineer because it was not licensed as a professional engineer under the New Jersey statute. In its holding with respect to the claim for the professional engineering fee, the Court stated that New Jersey cases relating to suits brought by non-licensed real estate brokers "are applicable in principle to the subject of professional engineering."

It is apparent from the foregoing statement that *Weinrott* is inapposite here on its facts in these respects: (1) there plaintiff sought compensation for services rendered as *principal* professional engineer to a defendant engaged in housing operations, while here plaintiff sought compensation for services rendered as a *consulting* professional engineer to a New Jersey licensed architect; and (2) there plaintiff was not licensed as a professional engineer in *any* state while here plaintiff was licensed as a pro-

fessional engineer in New York at the time it entered into its contract with defendant.

In *Magasiny,* the trial court granted summary judgment in favor of the defendants on the ground that the contract sued upon was not enforceable because the professional engineer plaintiffs were not licensed under the New Jersey statute. The Superior Court of New Jersey reversed and remanded for a plenary trial on the issue as to whether the plaintiffs were obliged to obtain a professional engineering license under the facts.

In doing so the Court said in relevant part at 221 A.2d 755–756–757:

"Our examination of the abbreviated record submitted to us leaves us in serious doubt whether plaintiffs were obliged to obtain such a license to carry on their activities. * * *

"Our doubts about the applicability of the statute arise from two related sources: the ambiguity of the statute, and the insufficiency of the record before us as to the plaintiffs' occupation or business and their activities generally, *and the nature and details of the particular contract sued upon and what plaintiffs did or were required to do to perform it.*

\* \* \* \* \* \*

"It may be that the transaction between the parties did not require plaintiffs to be licensed, even though their other activities did. In that case, should not the defense fail? There are numerous exceptions to such statutes. (citing cases) * * *.

"6A Corbin, supra, says:

" ' * * * The statute may be clearly for protection against fraud and incompetence; but in very many cases the statute breaker is neither fraudulent nor incompetent. He may have rendered excellent service or delivered goods of the highest quality, his non-compliance with the statute seems nearly harm-

less, and the real defrauder seems to be the defendant who is enriching himself at the plaintiff's expense. * * *

" 'It must be remembered that in most cases the statute itself does not require these forfeitures. It fixes its own penalties, usually fine or imprisonment of minor character with a degree of discretion in the court. The added penalty of non-enforceability of bargains is a judicial creation. In most cases, it is wise to apply it; but when it causes great and disproportionate hardship its application may be avoided. * * * ' "

\* \* \* \* \* \*

"Furthermore, as Corbin points out, supra, even when the activity is literally within the statute, the facts may present a situation so border line or unfair that the defense of illegality will not be permitted, or, at least, the defendant will not be allowed to keep what he received without making fair compensation. [citing cases] * * * "

What was said in *Magasiny,* decided in 1966, indicates quite clearly that the New Jersey courts have departed from the strictures of *Weinrott,* decided 14 years earlier. Significantly, *Weinrott* was not adverted to in *Magasiny* nor was it included in the numerous cited cases therein, bearing on licensing statutes.

While *Magasiny* cannot be said to be dispositive with respect to the issue here presented, it affords us an illuminating guide. Kennoy & Co. v. Graves, 300 S.W.2d 568 (Ky.Ct.App.1957), cited in *Magasiny,* is significantly pertinent here since it presented an analogous situation.

In *Kennoy,* it was held that the circumstance that plaintiff, a professional engineer, was not licensed as required by a Kentucky statute, did not constitute a defense to his action to recover compensation for services rendered as consulting engineer to defendant, a licensed engineer, who had contracted for the services with knowledge of the plaintiff's professional qualifications.

In so holding, the Court said (pp. 569–570):

"It has long been recognized in Kentucky, as elsewhere, that when a statute requires a license to practice a particular profession (the statute being enacted for the protection of the public), a contract for those professional services entered into with one not licensed is void and unenforceable. Board of Education of Ferguson Independent Graded School District v. Elliott, 276 Ky. 790, 125 S.W.2d 733. Appellee concedes the existence of this general rule, but claims there is an important exception when the contract is between a licensed and an unlicensed member of the same profession or trade. Whether or not this exception should be recognized is a new question in Kentucky.

"A leading case from another jurisdiction is Dow v. United States, 10 Cir., 154 F.2d 707. The plaintiff was an unlicensed subcontractor on a construction project. The controlling Utah statute was similar to ours with respect to requiring a contractor's license. The court recognized the general rule that a contract for services cannot be enforced by an unlicensed person. The court stated, however, at page 710:

" 'But that general rule does not have application in a case of this kind in which an unlicensed member of a profession or trade seeks to recover from a licensed member for services rendered or labor performed pursuant to a contract entered into by them. [citing cases] * * *'

"This exception seems to have been recognized in Oklahoma, Washington, New York, Colorado, and California. [citing cases]. * * *

"The statute involved, and similar ones, are designed to protect the public from being imposed upon by persons not qualified to render a professional service. *The reason for the rule deny-*ing enforceability does not exist when persons engaged in the same business or profession are dealing at arms length with each other. In the case before us appellant was in a position to know, and did know, the qualifications of appellee. No reliance was placed upon the existence of a license, as presumptively would be the case if appellee was dealing with the general public.*

"Some of the cases take the view that the professional employer should be estopped to invoke the statute, and others point out the aspect of unjust enrichment. *Without invoking specific equitable principles, it seems to us that the technical requirements of the licensing statute play no part in the determination of just claims between persons in the same business field who have contracted with knowledge of each other's respective professional qualifications. Appellant had no valid defense to this claim, and the trial court correctly adjudged recovery.*" (emphasis supplied)

Other jurisdictions are in accord with *Kennoy* and *Dow.*

The Court of Appeals of the Sixth Circuit, in Edmonds v. Fehler & Feinauer Construction Company, Inc., 252 F.2d 639, 642–643 (1958), where a nonlicensed real estate broker brought suit for commissions, cited and applied the doctrine of *Dow* and *Kennoy.*

In John E. Rosasco Creameries v. Cohen, 276 N.Y. 274, 11 N.E.2d 908, 118 A.L.R. 641 (1937), cited in *Magasiny,*[1] an action was brought by a milk dealer against another milk dealer to recover the agreed price of milk sold. The defendant dealer, as an affirmative defense, alleged that the plaintiff was not licensed as a milk dealer in accordance with the New York statute.

The Court squarely premised its holding in plaintiff's favor on the factor that the licensing statute did not expressly provide that contracts made by unlicensed milk dealers should be unenforce-

---

1. *Rosasco* is also cited in *Kennoy.*

able, and only made its violation a misdemeanor punishable by fine or imprisonment.

In doing so it said:

"Illegal contracts are generally unenforcible [sic]. Where contracts which violate statutory provisions are merely malum prohibitum, the general rule does not always apply. If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy or appropriate individual punishment, the right to recover will not be denied." 11 N.E.2d at 909.

It must be noted at this juncture that the New Jersey professional engineers' licensing act, N.J.S.A. at 45:8–39, does not contain a provision barring enforcement of claims of non-licensed engineers, and only provides for imposition of fines for its violation. Significantly, New Jersey's real estate brokers' licensing act was amended in 1953 to bar claims for compensation of non-licensed brokers. N.J.S.A. 45:15–3.

It must further be noted it is unquestioned that (1) plaintiff as a professional engineer, and defendant as an architect, are persons in the same business field who have contracted with knowledge of each other's respective professional qualifications; (2) no reliance

was placed by defendant upon the existence of a New Jersey professional engineer's license insofar as plaintiff was concerned; and (3) the plaintiff-defendant contract provided that plaintiff was only to furnish consulting engineering services to defendant.

Upon consideration of the stated factual elements and the factor that the New Jersey statute here involved does not contain a provision barring enforcement of claims of non-licensed engineers, we are of the opinion that plaintiff's claim for consulting engineering services against defendant is not unenforceable by reason of the circumstance that he was not licensed to practice as a professional engineer in New Jersey and that the Supreme Court of New Jersey would so hold.

Accordingly, the District Court's "Order of Judgment" will be vacated, and the cause remanded with directions to the District Court (1) to enter judgment in favor of plaintiff and against defendant in plaintiff's action against defendant in the sum of $9350;[2] (2) to enter judgment in favor of plaintiff and against defendant in the defendant's two count counterclaim against plaintiff;[3] and (3) to enter judgment in favor of defendant and against the third-party defendant, the Township of Maplewood, New Jersey, in defendant's third-party Complaint against The Township in the sum of $4675.[4]

---

2. In its Oral Decision, at the close of the trial, the District Court made these findings (1) "the plaintiff had earned, under the contract, a total of twelve thousand dollars, of which three thousand dollars has been paid, leaving a balance of nine thousand dollars"; and (2) "a reasonable compensation [for extra work performed by plaintiff] would amount to three hundred and fifty dollars." Plaintiff, on this appeal, seeks judgment in accordance with the $9350 award in its favor in the Oral Decision.

3. The District Court, in its subsequent written Opinion, made the finding that "With respect to the second count of defendant's counterclaim against plaintiff

[for $12,000 for services allegedly rendered by defendant to plaintiff which were claimed to be plaintiff's responsibility under the contract], there is an absence of evidence supportive of any right to recover thereunder", and in its Order of Judgment dismissed the second count of the counterclaim. Defendant has not appealed this dismissal.

4. The District Court, in its Oral Decision, held that "the Township of Maplewood will be obligated to Schmidlin [defendant] to reimburse to the extent of fifty per cent" of the $9350 judgment to be entered in favor of plaintiff against defendant.