ROTHENBERG, J.
MGM Construction Services Corp. (“the Subcontractor”) appeals from a summary final judgment in favor of Maleta Construction Co. (“the Contractor”), Travelers Casualty & Surety Co. of America (“Travelers”), and the University of Miami (“UM”). The trial court determined that as a matter of law, a subcontract entered into with an unlicensed subcontractor should be automatically dishonored in the courts of Miami-Dade County. Finding unresolved and disputed issues of material fact, we reverse.

I. BACKGROUND AND PROCEDURAL HISTORY

A. Facts Leading to Motions for Summary Judgment

The Contractor hired the Subcontractor to perform drywall and stucco work on four projects in Miami-Dade County, two of which were located at UM. As so often happens, a dispute arose between the parties before completion of the labor. The Subcontractor ceased working and filed claims of lien on all four projects. In June 2006, the Contractor sued the Subcontractor, alleging breach of contract and fraud in the inducement, and seeking discharge of the liens.
The Subcontractor responded with thirty-two counterclaims for breach of contract, conversion, and foreclosure of its liens. By way of a third-party complaint, the Subcontractor also sued UM and Travelers. The Subcontractor sued Travelers on the basis of the bonds obligating Travelers to pay the projects’ Subcontractors for the labor and material expenses they incurred on behalf of the Contractor. The Subcontractor also sought to foreclose the liens on UM’s property which the Subcontractor claims are contractually authorized.
The Contractor, Travelers, and UM all submitted affirmative defenses, including the defense of illegality/unenforceability of contract. Those defenses were based on the fact that the Subcontractor did not possess a specialty contractor’s license as required by the Miami-Dade County Code of Ordinances (“MDCO”). See Miami-Dade, Fla., Code § 10-3 (2009) (“It shall be unlawful for any person, firm, joint venture, or corporation to engage in the business or act in the capacity of contractor or subcontractor ... without ... there having been issued a current valid certificate of competency or eligibility for the type 'of work donef.]”).[1] In October 2008, the Contractor, UM, and Travelers (collectively, “the moving parties”) ah moved for summary judgment on the contract-based *886 counts in the Subcontractor’s counterclaim and third-party complaint.

B. First Version of Summary Judgment Arguments

At first, the moving parties focused on section 489.128(1), Florida Statutes (2008), which provides that “[a]s a matter of public policy, contracts entered into on or after October 1, 1990, by an unlicensed contractor shall be unenforceable in law or in equity by the unlicensed contractor.” Furthermore, subparagraph (l)(a) provides in part that “[f]or purposes of this section, if no state or local license is required for the scope of work to be performed under the contract, the individual performing that work shall not be considered unlicensed.” (Emphasis added). Accordingly, the original arguments made by the moving parties may be fairly summarized as follows: (1) the MDCO requires a local license; (2) the Subcontractor never possessed such a license; (3) section 489.128 provides that such a contractor is unlicensed; and therefore (4) under the express language of section 489.128(1), the subcontract was unenforceable by the Subcontractor.
“Case closed,” it seemed, and as the trial court noted, the moving parties appeared destined for certain victory. “But,” in the immortal words of Phil Collins, “something happened on the way to heaven.”[2]

C. Amended Summary Judgment Arguments and Decision

In 2009, the Legislature amended the last sentence of section 489.128(l)(a) to read: “For purposes of this section, if a state license is not required for the scope of the work to be pei'formed under the contract, the individual performing that work is not considered unlicensed.” § 489.128(l)(a), Fla. Stat. (2009) (emphasis added); see Ch. 2009-195, § 38, at 1955, Laws of Fla. (detailing amendments to section 489.128(l)(a)). The Legislature removed the “or local license” language, and that change applied retroactively not only to contracts entered into on or after October 1, 2000, but also to “all actions pending when this act becomes a law,” or on October 1, 2009. Ch. 2009-195, §§ 66, 68, at 1972, Laws of Fla. The bottom-line result of these changes was that the Subcontractor’s lack of a local license no longer triggered the unenforceability provision of section 489.128(1).
Despite the 2009 amendments to the law, the moving parties continued to pursue their summary judgment motions, arguing that the Subcontractor’s violation of the MDCO, standing alone, was sufficient to render the subcontracts unenforceable as a matter of law. Unlike section 489.128(1), the MDCO does not expressly provide that contracts entered into by unlicensed contractors will be rendered unenforceable by the unlicensed party. However, the MDCO specifically provides a number of civil and administrative penalties for unlicensed contracting. See § 10-14 (providing grounds for discipline, penalties, and enforcement). In addition, section l-5(a) provides generally that any violation of the MDCO may subject the wrongdoer to a criminal fine or up to sixty days in jail. Thus, the moving parties argued that the subcontracts were entered into against public policy, and under the general rule of Florida, they “may not be made the basis of any action either in law or in equity.” Local No. 234 v. Henley & Beckwith, Inc., 66 So.2d 818, 823 (Fla.1953).
*887 The trial court issued an order granting the moving parties’ motions for summary-judgment. The trial court found that the subcontracts were, pursuant to the MDCO, unlawful, and therefore unenforceable. The trial court entered summary final judgment and this appeal followed.

II. ANALYSIS

A. Standard of Review

The applicable standard of review is de novo, and summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). The existence of an unresolved or disputed issue of material fact precludes summary judgment. MacKendree & Co., P.A. v. Pedro Gallinar & Assocs., P.A., 979 So.2d 973, 976 (Fla. 3d DCA 2008).

B. The Dial Court’s Order

Following the 2009 amendments to section 489.128, the issue before the trial court was substantially modified. The Subcontractor was unlicensed in violation of the MDCO, which subjects violators to a number of potential administrative, civil, and criminal penalties. However, the MDCO is silent as to whether a violation has any effect on the enforceability of the underlying contract. Accordingly, at the final summary judgment hearing, the trial court heard argument on whether and to what extent the Subcontractor’s violation of the MDCO affected the enforceability of the subcontracts.
At this point, it is important to note something that the trial court did not do. The trial court did not make an explicit finding that the Subcontractor and the Contractor were both guilty of some form of wrongdoing, and that therefore, both parties are equally prohibited from obtaining relief based on the contract. In those situations, “as we pontifically say in the law,” the parties are in pari delicto, and a court will not lend its aid to either party, “but will leave the parties where they place themselves.” Castro v. Sangles, 637 So.2d 989, 991 (Fla. 3d DCA 1994); see also Black’s Law Dictionary 806 (8th.ed. 2004) (noting that under the in pari delicto doctrine, “a plaintiff who has participated in a wrongdoing may not recover damages resulting from the wrongdoing”). The trial court did not make such a finding, and from our review of the record, it does not appear this case would fit the parameters of the in pari delicto doctrine.
What the trial court did rule was that simply because the Subcontractor was unlicensed, in violation of the MDCO — a legislative instrument providing administrative, civil, and criminal penalties for violations — as an automatic matter of law, the subcontracts were rendered void, and the Subcontractor was prohibited from obtaining any remedy from the courts. The reasoning behind the trial court’s ruling can be summed-up in the following “undoubted rule” expressed by the Florida Supreme Court': “ ‘[WJhere a statute pronounces a penalty for an act, a' contract founded upon such act is void, although the statute does not pronounce it void or expressly prohibit it.’” Town of Boca Raton v. Raulerson, 108 Fla. 376, 146 So. 576, 577 (1933) (quoting Berka v. Woodward, 125 Cal. 119, 57 P. 777, 779 (1899)). Nevertheless, for the reasons that follow, we conclude that the trial court’s decision was error.
C.The Trial Court Erred in Summarily Determining that the Subcontractor Is, As an Automatic Matter of Law, Entitled to No Remedy

1. The Need for Flexibility

The fundamental problem with an inflexible rule is that it opens the door to sub *888 stantial injustice in certain cases. The applicable legislative body — here the Miami-Dade Board of County Commissioners — was free to require that contracts entered into by an unlicensed contractor shall be unenforceable in law or in equity by the unlicensed party. See Metro. Dade Cnty. Fair Hous. & Emp’t Appeals Bd. v. Sunrise Vill. Mobile Home Park, Inc., 511 So.2d 962, 965 (Fla.1987) (noting that under Florida’s Constitution, the government of Miami-Dade County may exercise the same legal powers as any other municipality, and that under section 166.021(3), municipalities may “enact legislation concerning any subject matter upon which the state legislature may act”). However, in the present case, that legislative body did not elect to do so. Thus, whether the penalty of unenforceability should be applied in any given case falling under the MDCO is a decision that was effectively delegated to the courts.
And that decision is by no means an easy one. Inevitably, there will be situations in which an inflexible rule precluding any recovery by an unlicensed subcontractor cannot be applied in good conscience. For example, in Dow v. United States for Use & Benefit of Holley, 154 F.2d 707, 708 (10th Cir.1946), the court was faced with a lawsuit brought by Holley, a subcontractor, against Dow, the general contractor on a construction project on an army air base in Utah. Holley completed the work under the subcontract. Id. at 711. Holley, however, was unlicensed, in violation of a Utah law making it unlawful “to.engage in the business or act in the capacity of contractor within the state without having a license.” Id. at 710. The Utah law provided a penalty for violations, but nowhere did it explicitly state that a contract entered into with an- unlicensed party would be unenforceable. Id.
The Tenth Circuit -noted that ordinarily, Holley, as an unlicensed subcontractor in violation of Utah law, would be unable to enforce his rights under the contract with Dow. Id. However, the court held, “[bjoth contracts having been completed and Dow having received payment in full, it would not further the letter or the spirit of the law to allow him to escape liability for the unpaid balance due Holley by asserting the illegality of the subcontract.” Id. at 711. Thus, the Dow case stands for the proposition that in the absence of legislative direction, a hard and fast rule declaring contracts unenforceable is bound to result in inequitable or absurd outcomes in certain situations, and that some flexibility in the decision-making process is required.
Two competing needs confound the courts as decision makers. First is the need to shield the general public from shoddy workmanship. Second is the need to protect unlicensed parties from being preyed upon by unscrupulous owners and general contractors as demonstrated in the Dow case. On this subject, the authors of Corbin on Contracts have stated:
The statute clearly may protect against fraud and incompetence. Yet, in very many cases the situation involves neither fraud nor incompetence. The unlicensed party may have rendered excellent service or delivered goods of the highest quality. The noncompliance with the statute may be nearly harmless. The real defrauder may be the defendant who will be enriched at the unlicensed party’s expense by a court’s refusal'to enforce the contract. Although courts have yearned for a mechanically applicable rule, most have not made one in the present instance. Justice requires that the penalty should fit the crime.... The statute fixes its own penalties, usually a fíne or imprisonment of a minor character with a degree of discretion in the court. The added penalty *889 of unenforceability of bargains is a judicial creation. In many cases, the court may be wise to apply this additional penalty. When nonenforcement causes great and disproportionate hardship, a court must avoid nonenforcement.
15 Corbin on Contracts § 88.3, at 577-78 (rev. ed. 2003).
In other words, all violations of licensing statutes are not created equally, and the courts faced with whether to add the penalty of non-enforceability to a violation of a licensing provision, where the statute or ordinance does not provide for such a penalty, must take a flexible approach. The violation of a licensing provision does implicate concerns over whether the other party and the public at large are sufficiently protected from shoddy workmanship. However, the mere existence of a violation, standing alone, is insufficient to automatically trigger the judicial penalty of unenforceability.
In the present case, the trial court added the penalty of unenforceability to the MDCO based on the mere fact that the Subcontractor violated the MDCO’s license requirement.- This was error. While the trial court correctly noted that the Subcontractor’s violation implicated concerns over whether the public was being sufficiently protected from shoddy workmanship, it did not consider whether any other factors weighed in favor of the need to avoid non-enforcement. In short, the trial court applied a hard and fast rule, not the flexible approach required to ensure the prevention of injustice.

2. The Restatement Approach

In the Restatement (Second) of Contracts, the authors illustrated how courts should determine, in the absence of legislative direction, whether a party’s failure to comply with a licensing requirement should trigger the penalty of non-enforceability. This Court is persuaded that the Restatement framework provides appropriate guidance on how to flexibly approach the question of whether to add the penalty of non-enforceability. The framework provided is as follows:
If a party is prohibited from doing an act because of his failure to comply with a licensing, registration, or similar requirement, a promise in consideration of his doing that act or his promise to do it is unenforceable on grounds of public policy if
(a) the requirement has a regulatory purpose, and
(b) the interest in the enforcement of the promise is clearly outweighed by the public policy behind the requirement.
Restatément (Second) of Contracts § 181 (1981).
It bears mentioning that the trial court did correctly determine that the MDCO has a regulatory purpose, and is more than a mere revenue-raising measure. The trial court noted that the MDCO requires a prospective contractor to possess and maintain a certain level of experience, aptitude, and public liability insurance. We therefore agree with the trial court that the licensing requirement in the MDCO is a regulatory measure.
Under the Restatement’s approach, the next step for the trial court'was to determine whether the public policy behind the MDCO clearly outweighed the interest in allowing the Subcontractor to enforce the Contractor’s promise. To that end, the Restatement identifies a number of factors that should be taken into account:
(2) In weighing the , interest in the enforcement of a term, account is taken of
(a) the parties’ justified expectations-,
*890 ‘(b) any forfeiture that would result if enforcement were denied, and
(c) any special public interest in the enforcement of the particular term.
(3) In weighing a public policy against enforcement of a term, account is taken of
(a) the strength of that policy as manifested by legislation or judicial decisions,
(b) the likelihood that a refusal to enforce the term will further that policy,
(c) the seriousness of any misconduct involved and the extent to which it was deliberate, and
(d) the directness of the connection between that misconduct and the term.
Restatement (Second) of Contracts § 178 (1981).
As previously noted, not all violations of a licensing requirement are created equally. With no great stretch of the imagination, one can envision a situation in which a contractor is “unlicensed” due to a late or missed payment. Perhaps an illness prevented someone from keeping current with their continuing education requirements. An' unlicensed subcontractor may have performed as contracted, providing the required quality and timeliness, only to be left uncompensated by a contractor who hired the subcontractor with the full knowledge that he was unlicensed. The possibilities are endless, but they emphasize the wisdom in applying a flexible approach when judicially determining whether the penalty of non-enforceability should be applied. The above-listed factors are not exclusive, and they need not be considered individually or in exhaustive detail. However, they pose material questions, and summary judgment is inappropriate until the facts are developed to the point where those questions can be answered.
In this case, the trial court automatically added the judicial penalty of non-enforceability after taking into account the fact that the Subcontractor violated the MDCO, and the MDCO exists to protect the public from shoddy workmanship. While consideration of the various relevant factors may ultimately lead the trial court to the same conclusion, the analysis was incomplete, and thus summary judgment was inappropriate.

3. The Unique Interests Involved in the Contractor/Subcontractor Context

As noted above, the trial court’s error lies in the fact that it failed to consider whether any material factors cut in favor of allowing the Subcontractor to enforce the terms of its agreements with the Contractor. The trial court found that the Subcontractor’s violation of the MDCO implicated concerns over whether the public was sufficiently protected from shoddy workmanship and went no further. The trial court ruled that when that policy is implicated, the penalty of non-enforceability ought to be automatically triggered as a matter of law.
The chief shortcoming in the trial court’s analysis is that it failed to weigh the unique interests implicated -by the specific facts of this case against the policy considerations that favored non-enforcement. The actual property owners involved in this case conducted their business with the Contractor, a business which as far as this Court can discern, was fully licensed, insured, and in compliance with the law. Surely, this fact afforded the members of the general public some protection. When the Contractor reached an agreement with the Subcontractor, presumably, it did so with some knowledge of the Subcontractor’s reputation and ability. Thus, we conclude that the trial court erred in failing to consider the arms length, professional nature of the relationship between the Contractor and the Subcontractor, as well as *891 the other relevant factors, along with the competing policy concerns.
This conclusion is not without support in the law. See, e.g., Dow, 154 F.2d at 710 (holding that the ordinary rule that contracts entered into by unlicensed parties are unenforceable does not apply where the unlicensed party seeks to recover from a licensed member of the same profession); accord Costello v. Schmidlin, 404 F.2d 87 (3d Cir.1968); Edmonds v. Fehler & Feinauer Constr. Co., 252 F.2d 639 (6th Cir.1958); Kennoy v. Graves, 300 S.W.2d 568, 570 (Ky.App.1957); Alcoa Concrete & Masonry, Inc. v. Stalker Bros., 191 Md.App. 596, 993 A.2d 136, 143-44, cert. granted, 415 Md. 41, 997 A.2d 791 (2010); Christenberry Trucking & Farm, Inc. v. F & M Mktg. Servs., Inc., 329 S.W.3d 452 (Tenn.App.), appeal denied, (Tenn. Oct. 21, 2010).

4. The Limits of This Court’s Holding

Although upon remand the trial court may ultimately come to the same conclusion — that the subcontracts between the Contractor and the Subcontractor are unenforceable — we are compelled to reverse the summary final judgment now before us because the analysis that led to the trial court’s initial decision was incomplete. By way of instruction, we direct the trial court to consider, at a minimum, the following relevant and material factors: (1) whether the nature of the contracting parties’ relationship made the need to protect the public from shoddy workmanship less compelling; (2) the extent to which the Subcontractor’s violation of the MDCO was serious and deliberate; (3) the quality of the work performed by the Subcontractor; (4) whether the Contractor knew the Subcontractor was unlicensed; and (5) whether and to what extent injustice would result in preventing the Subcontractor from any recovery.
Lastly, we note that our decision is in line with a previous decision of this Court. In Warren v. Bill Ray Construction Co., 269 So.2d 25, 26 (Fla. 3d DCA 1972), the trial court entered summary judgment in favor of a defendant-contractor which argued, in part, that the plaintiff-subcontractor was entitled to no relief because it was unlicensed in violation of a county ordinance. This Court held that “the failure to hold a certificate of competency would not preclude recovery by the plaintiff partnership, although it might subject it to penalty at the instance of the county.” Id. at 27. Thus, while our decision is not founded entirely upon the Warren case, that opinion supports this Court’s conclusion. A trial court cannot add the penalty of non-enforceability to a licensing ordinance based on the mere fact that there was a violation. The policy interests behind the ordinance are but one of a host of factors that must be considered before this judicial penalty is tacked on to a legislative instrument.

III. CONCLUSION

The trial court was faced with a very difficult question: Whether a contractual party — who is unlicensed in violation of an ordinance that does provide penalties, but is silent as to the violation’s effect on the enforceability of the underlying contract— should be precluded from any remedy. The trial court, noting the public interest behind the MDCO, determined as an automatic matter of law that the Subcontractor was precluded from any and all remedies. We have concluded that this was error and hold that where the applicable legislative body does not choose to add the penalty of non-enforceability to a licensing provision, the courts may do so, but must take care to ensure the prevention of injustice. Under the trial court’s approach, an unscrupulous general contractor would have too much incentive to employ an unlicensed *892 party, take advantage of those services, but escape liability for its promise to pay. Although the policies behind the MDCO are valid, and they must be considered, the trial court should have considered the relative strength of these policy concerns, and weighed them against the competing policies, if any.
Because a number of factual questions must be answered before the factors identified in the foregoing sections of this opinion can be appropriately considered, we reverse the trial court’s order granting summary final judgment, and we remand for further proceedings consistent with this opinion.
Reversed.

. The parties do not dispute that the MDCO requires a certificate of competency for the *886 type of work that the Subcontractor contracted to perform. The parties also agree that the Subcontractor was not required to hold a state-level license.

. Phil Collins, Something Happened on the Way to Heaven, on ... But Seriously (Atlantic Records 1989).