971 So.2d 892 (2007)
INTERESTED UNDERWRITERS, Appellant,
v.
SEAFREIGHT LINE, LTD., et al., Appellees.
No. 3D06-3127.
District Court of Appeal of Florida, Third District.
November 28, 2007.
Rehearing Denied January 16, 2008.
James J. McNally, for appellant.
Thomas V. Halley; Cichanowicz Callan Keane Vengrow & Textor and Joseph DeMay, Jr., for appellees.
Before GREEN, ROTHENBERG, and SALTER, JJ.
SALTER, J.
Interested Underwriters appeals a final judgment summary judgment in favor of SeaFreight Line, Ltd. and SeaFreight Agencies, Inc. (together, "SeaFreight") in a case involving the application of the statutory loss limitation in the Carriage of Goods by Sea Act ("COGSA").[1] The trial court granted summary judgment based on the case of Groupe Chegaray v. De Chalus v. P & O Containers, 251 F.3d 1359 (11th Cir.2001), finding that a container filled with eight pallets (each containing 140 cartons of perfume) and 55 loose cartons of perfume constituted 63 "packages" for purposes of COGSA's $500-per-package limitation.
We reverse, finding ample evidence in the record below that each carton of perfume was a "package" and thus that there were a total of 1,175 packages,[2] and that the Groupe Chegaray decision turned on an express agreement between shipper and carrier that a pallet would be considered a "package" for COGSA purposes. In this case, there was no such agreement.
*894 We review a summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party  here, the appellant, Interested Underwriters. If the "slightest doubt" exists, we must reverse. Sierra v. Shevin, 767 So.2d 524, 525 (Fla. 3d DCA 2000).
The Bills of Lading and the Insured Loss
Dinamis Trading, not a party below or here, sought to ship 1,175 cartons of perfume from Venezuela to Borealis Trading's warehouse in Miami via SeaFreight. The goods never reached the consignee, and Insured Underwriters paid the insured amount of $583,573.06  approximately $487 per carton  to its insured for the loss. Insured Underwriters (as subrogee) then sued SeaFreight and a Florida ground transportation company.[3]
During discovery, the parties identified three bills of lading relating to the shipment. Each carried the logo and name of SeaFreight, but only one was stamped "original" and apparently signed by someone on behalf of SeaFreight. The original bill of lading was dated February 3, 2003. Under the form's heading, "NO. OF PKGS.," the typewritten number "1" appears. The parties agree that this is a reference to the single 20-foot container and is not a reference to the number of COGSA "packages" shipped. The description of the container's contents under the heading "DESCRIPTION OF PACKAGES AND GOODS" is:
8 PALLETS CON 1.120 CARTONES
55 CATONES SUELTOS
TOILLET PREPARATIONS
The parties agree that the English and correctly-spelled translation of that description is "8 pallets with 1,120 cartons, 55 loose cartons, perfume."
The second of the three bills of lading identified during discovery is unsigned, stamped "non-negotiable," bears the same date as the original, and includes substantially the same description of the goods. The third bill of lading, also unsigned and stamped "non-negotiable," is dated four days after the original (February 7, 2003) and describes the packages and goods as "TOILET PREPARATIONS 1175 PCS."
The parties did not, unfortunately, use the term "package" in the typewritten description of goods in any of the bills of lading so as to memorialize an agreement that the cartons, pallets, or both would be "packages" for COGSA purposes.
What Did Congress Mean by "Package?"
Congress enacted COGSA in 1936, and its $500 per "package" limitation has never been upwardly adjusted. Perhaps unaware of the proclivity of lawyers to argue endlessly about the simplest of terms, Congress included no definition of "package" in COGSA and left no legislative history to guide those of us who follow.[4] This has spawned literally dozens of cases on the point, as well as at least one thorough and scholarly law review comment.[5]
Generations of judges have done their best to bring order to the case law and to apply prior decisions to new methods of packaging and transporting goods by sea. Cartons of orange juice, men's jackets, and all manner of goods have been characterized *895 as "packages," while other decisions have focused on which party  shipper or carrier  prepared the goods for shipment, or on the visibility of the shipped goods to the carrier. In a case such as this, "the bill of lading refers to both the container and `other units susceptible of being COGSA packages'" and is therefore "inherently ambiguous." MacClenny Products, Inc. v. Tropical Shipping and Construction Co., Ltd., 832 So.2d 888, 890 (Fla. 4th DCA 2002) (citation omitted) (reversing summary judgment in favor of carrier).
In this case it is also useful to consult the dictionary for the definitions of "package," "pallet," and "carton," as these are the terms in contention. Webster[6] defines package as "a small or moderate sized pack," or "a commodity in its container: a unit of a product uniformly processed, wrapped, or sealed for distribution," as in a "package of cigarettes." A pallet in this context is "a portable platform of wood, metal, or other material designed for handling by a forklift truck or crane and used for storage or movement of materials and packages in warehouses, factories, or transport vehicles" (emphasis supplied). A "carton" is "a cardboard box or container; esp.: a relatively small container that when filled with merchandise is enclosed in a larger and stronger container for shipping" (emphasis supplied).
Applying these terms from the bills of lading to the cartons of perfume on pallets for shipment in a container, the plain and ordinary meaning of the terms is obvious. The cartons are the "packages" placed on pallets, which are in turn placed in a container for shipping. Had the parties described the goods simply as eight pallets of perfume and 55 loose cartons, SeaFreight likely would have prevailed. But on the original bill of lading and the later, unsigned bill of lading on SeaFreight's form, the parties apparently thought it important to specify the total number of cartons being shipped.
SeaFreight cites DCI Management Group, Inc. v. M.V. Miden Agan, No. 03 Civ. 448(DLC), 2004 WL 1078667 (S.D.N.Y. May 14, 2004) for a case in which eight pallets for the shipment of 595 individual cartons of frozen blood plasma were held to constitute only eight COGSA "packages." In that opinion, the trial court distinguished three separate cases  including one from the United States Court of Appeals for the Eleventh Circuit  reaching a contrary conclusion, and there was an important fact that is not in this record. In DCI Management Group, the bill of lading was prepared by the shipper, DCI, and it described the cartons as placed on eight pallets. In one facsimile describing the shipment, DCI's chief financial officer described the cargo as "eight pallets" and made no mention of the number of cartons of plasma. Id. at *4. Accordingly, we disagree that the analysis in DCI Management Group is controlling or applicable.
Conclusion
SeaFreight and its co-defendant below obtained a summary judgment based on a case in which the on-board bill of lading referred to the pallets as "packages." Groupe Chegaray, 251 F.3d at 1365. The original bill of lading and other unsigned versions evidenced no such intention or agreement in this case.
Reversed.
NOTES
[1] 46 U.S.C. app. § 1300-1315 (2003) (current version at 46 U.S.C. § 30701 (2007)).
[2] The economic significance of this difference, before the addition of any prejudgment interest, is the difference between an aggregate loss limitation of $31,500 versus $587,500.
[3] That defendant below, Florida Transportation Services, settled with Interested Underwriters for an amount which will be credited against any further sum recoverable by Interested Underwriters.
[4] See Hartford Fire Ins. Co. v. Pacific Far East Line, Inc., 491 F.2d 960, 963 (9th Cir.1974).
[5] Nancy A. Sharp, Comment, What Is a COGSA Package?, 5 PACE INT'L L.REV. 115 (1993).
[6] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED EDITION (1986).