CORTINAS, J.
 

 It is well established that “summary judgment should be granted only when there is a complete absence of genuine issues of material fact,”
 
 Copeland v. Fla. New Invs. Corp.,
 
 905 So.2d 979, 980 (Fla. 3d DCA 2005) (citing
 
 Holl v. Talcott,
 
 191 So.2d 40 (Fla.1966)), and the moving party is entitled to judgment as a matter of law.
 
 *167
 

 Carpineta v. Shields,
 
 70 So.2d 573, 574 (Fla.1954) (citing Rule 56(c), Fed.R.Civ.P.). If the pleadings, discovery, depositions, and admissions “reveal[ ] the possibility of genuine issues of material fact, or even the slightest doubt, summary judgment should be denied.”
 
 Copeland,
 
 905 So.2d at 980 (citing
 
 Besco USA Int’l v. Home Sav. of Am. FSB,
 
 675 So.2d 687 (Fla. 5th DCA 1996)). A trial court’s grant of summary judgment is reviewed under a de novo standard,
 
 Krol v. City of Orlando,
 
 778 So.2d 490, 492 (Fla. 5th DCA 2001) (citing
 
 Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126 (Fla.2000)), and this Court “must consider the evidence contained in the record, including any supporting affidavits, in the light most favorable to the non-moving party ... and if the slightest doubt exists, the summary judgment must be reversed.”
 
 Id.
 
 In this case, the record is rife with issues of material fact, which require reversal.
 

 The dominant issue in deciding this claim for attorneys’ fees is whether the Rakusin Law Firm and Gerald Damsky, P.A., (collectively “the Law Firms”) abandoned their representation of the Estate in Arizona or whether they continued working on the Estate’s behalf, despite being shut out of the appeal, until they were ordered by the court to withdraw.
 

 The first point in question is whether the Law Firms in fact withdrew from the Arizona litigation in May 2000.
 
 [1]
 
 The Estate presents multiple examples of the Law Firms expressing the intent not to represent the Estate in its appeal,
 
 [2]
 
 but they are not dispositive. In contrast, the Law Firms supplied other evidence showing their involvement, thus creating a material factual issue that may not be resolved on summary judgment.
 

 A second point in question is whether the Estate retained an Arizona attorney to serve as its sole counsel or merely as local counsel for the appeal in conjunction with the Law Firms. Vieques Air Link, one of the Estate’s creditors, hired Loren Molever after a dispute with the Law Firms, their local counsel (who subsequently withdrew from the appeal), and Edward Swan, the Estate’s Successor Personal Representative. Molever filed a notice of appearance on behalf of both the Estate and its creditors and later testified that he did not “ever have an understanding that [he] was to act as local counsel for [the Law Firms].” Furthermore, the Estate argues, the record shows that after the Law Firms filed their motions to withdraw, they did not file motions, papers, briefs, or a notice of joinder in the appeal. On the other hand, the Law Firms allege a number of instances when Molever took direction from them regarding the appeal. In fact, he complained in a letter to Vieques that its instructions were inconsistent with those of the Law Firms but acknowledged that its motion requesting that he “be appointed as
 
 co-counsel with
 
 [the Law Firms] for the [E]state ... may solve some or all of the concerns.” (Emphasis added.) The Law Firms have introduced time sheets that show both communications with Molever regarding the appeal and the review and delivery of files to him, which they claim proves their involvement
 
 *168
 
 with the appeal. The Estate counters that these transmissions merely evince the Law Firms’ compliance with their ethically mandated transitional duty to assist new counsel. See Fla. Ethics Opinion 84-3.
 

 Another issue is whether Polly Rapp, the Arizona counsel Vieques retained after it forced Molever to withdraw, prevented the Law Firms from working on the appeal or whether they are using her hiring as an excuse for their abandonment. Rapp testified that she “represented the [Appellants’] interests” ever since she filed a notice of substitution of counsel in the Arizona Appellate Court, but the Law Firms claim that she “had no authority to represent Swan or the Estate except to the extent that prior counsel, Molever, had agreed in writing to include the Estate in the appellate brief....” Rapp filed the Appellants’ Initial Brief on behalf of all creditors and the Estate; the Law Firms were not included on the certificate of service and apparently remained uninvolved for the rest of the appeal. In fact, two months after the filing of the initial brief, the Estate moved to appoint Rapp as its Arizona counsel, claiming that after the trial court had granted summary judgment and the defendants had moved for attorney’s fees, “original counsel declined to continue representation” and that the “Estate no longer ha[d] counsel in Arizona to represent its interest.”
 

 Finally, the record demonstrates inconsistent statements by Swan as to the Law Firms’ involvement with the litigation. As “we must draw every possible inference in favor of the party against whom the motion is made,” it is impossible for us to conclude, as a matter of law, the Law Firms had abandoned the Estate.
 
 Wills v. Sears, Roebuck & Co.,
 
 351 So.2d 29, 32 (Fla.1977) (citing
 
 First Realty Corp. v. Standard Steel Treating Co.,
 
 268 So.2d 410, 413 (Fla. 4th DCA 1972)).
 

 Given the disputed factual issues prevalent in the record, we cannot affirm the trial court’s grant of summary judgment.
 

 Reversed and remanded.
 

 [1]
 

 . The Law Firms and the Estate tussle over the reason for the Law Firms’ intention to withdraw, but such speculation here would be inappropriate and superfluous. Therefore, we need not consider whether the trial court erred in striking portions of Rakusin’s affidavit.
 

 [2]
 

 . The Law Firms' retainer agreement with the Estate states that they are "retained, employed and empowered to institute on the Client’s behalf such action as may be advisable in its professional judgment, including the taking of an appeal after final judgment therein, and to effect a final compromise....”