CORTIÑAS, J.
 

 I.
 
 Factual Background
 

 Austin Commercial, L.P. (“ACLP”) and Merrick Trust, LLC (the “Owner”) entered into a contract (the “Prime Contract”) for the construction of a mixed-use commercial and luxury residential condo
 
 *33
 
 minium in Coral Gables, Florida (the “Project”). At the time the Prime Contract was executed on March 29, 2005, ACLP was qualified under section 489.119(2), Florida Statutes, to perform construction. The Prime Contract specifically provided that once ACLP’s affiliate, Austin Building Company (“ABC”), obtained state licensing, the Prime Contract and all related documents would be assigned from ACLP to ABC.
 

 After the execution of the Prime Contract, ACLP engaged Rago, Ltd. (“Rago”) to construct the structural concrete components. Rago mobilized to the Project site on March 31, 2005 and commenced work on or about April 4, 2005. ACLP did not learn that Rago was unlicensed until approximately sixteen days after work had commenced. Upon discovering Rago’s unlicensed status, a representative of ACLP confronted Rago and was reassured that Rago would obtain licensure. Approximately four months after the work on the Project commenced, ABC obtained state licensing and formally executed a contract with Rago (the “Subcontract”). Although executed in July 2005, on its face, the Subcontract showed April 1, 2005 as the date of execution. Eventually, ABC terminated Rago after apparent dissatisfaction with delays and defects in its performance. In February 2007, Rago sued ABC, ACLP, and their surety, Federal Insurance Company (“Federal”) for amounts purportedly owed under the Subcontract. ABC, in turn, countersued Rago for damages arising from Rago’s purportedly defective work on the Project and filed a third party complaint against Federal, which was also serving as Rago’s surety. Rago and ABC filed opposing motions for summary judgment, each asserting that the other was an unlicensed contractor under section 489.128, Florida Statutes, and therefore, could not enforce the Subcontract.
 
 [1]
 
 The trial court granted the motions for summary judgment and entered final judgments as to Federal. This appeal followed.
 

 II.
 
 ABC’s Appeal
 

 ABC appeals a final summary judgment in its action against Rago. Our review of the record demonstrates the existence of genuine issues of material fact precluding summary judgment. Accordingly, we reverse.
 

 When the record demonstrates the existence of disputed, material issues of fact, summary judgment is erroneous.
 
 Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126 (Fla.2000);
 
 Rakusin Law Firm v. Estate of Dennis,
 
 27 So.3d 166 (Fla. 3d DCA 2010);
 
 Copeland v. Fla. New Invs. Corp.,
 
 905 So.2d 979, 980 (Fla. 3d DCA 2005). “[0]n review of an order granting summary judgment, we are required to review the record de novo and construe all facts in a fashion most favorable to the non-movant.”
 
 Ortega v. Eng’g Sys. Tech., Inc.,
 
 30 So.3d 525, 527, 530 (Fla. 3d DCA 2010);
 
 Interested Underwriters v. SeaFreight Line, Ltd.,
 
 971 So.2d 892, 894 (Fla. 3d DCA 2007). In this case, the facts surrounding the assignment of the Prime Contract to ABC, the identity of the actual contractor when work commenced on the Project and when work was performed by Rago, and the parties’ knowledge of each other’s lack of licensure, were disputed, and when viewed in the light most favorable to ABC, present genuine issues of material fact sufficient to preclude summary judgment.
 

 
 *34
 
 Section 489.128, Florida Statutes (2005) provides:
 

 (1) As a matter of public policy, contracts entered into on or after October 1, 1990, by an unlicensed contractor shall be unenforceable in law or in equity by the unlicensed contractor.
 

 (c) For purposes of this section, a contractor shall be considered unlicensed only if the contractor was unlicensed on the effective date of the original contract for the work, if stated therein, or, if not stated, the date the last party to the contract executed it, if stated therein. If the contract does not establish such a date, the contractor shall be considered unlicensed only if the contractor was unlicensed on the first date upon which the contractor provided labor, services, or materials under the contract.
 

 § 489.128(l)(c), Fla. Stat. (2005) (emphasis added). Under the statute, the critical dates for determining whether a contractor was unlicensed are 1) the effective date of the original contract, 2) the date the last party to the contract executed it, or 3) the first date upon which the contractor provided services, labor, or materials under the contract. Here, ABC presented evidence that, when viewed in the light most favorable to it, demonstrates that when Rago first began working on the Project, ACLP was the contractor and was properly licensed.
 

 Moreover, while the Subcontract specifically lists ABC as the “Contractor,” Paragraph 1 of the Subcontract provides as follows:
 

 1. The “Prime Contract” is the Contract between the Owner and the Contractor. The construction called for in the Prime Contract is called the “Work.” The term “Prime Contract” includes the Plans, Specifications, General and Special Condition, Addenda, and all other contract documents that are incorporated into this [Subcontract] by its terms. Each Party to this [Subcontract] acknowledges that it is familiar with the terms of the Prime Contract, and agrees that the Prime Contract (including the contract documents incorporated herein) is incorporated herein in its entirety for all purposes as if copied at length and attached hereto.... In the event of a discrepancy between the Prime Contract and this [Subcontract], this [Subcontract] will govern.
 

 (Emphasis added). Although ABC is listed as the contractor, it is undisputed that the Prime Contract was between the Owner and ACLP, as contractor, and was fully incorporated into the Subcontract. It is also undisputed that ACLP was licensed at the time it entered into the Prime Contract. Furthermore, there is record evidence that, in early April 2005, Rago corresponded directly with ACLP, as the apparent contractor, providing an update on its delivery of materials to the jobsite and test reports for approval to begin construction. Under the terms of the Prime Contract, ABC could not have acted as contractor on the Project until such time as it was licensed. Taken in the light most favorable to ABC, Rago’s correspondence with ACLP as well as the language of the Prime Contract and the Subcontract, create a genuine issue of fact as to who was the “contractor” on the Project as of April 1, 2005.
 

 Because the evidence in the record, when viewed in the light most favorable to ABC, shows the existence of genuine issues of material fact, we reverse the entry of summary judgment as to ABC.
 
 [2]
 
 Ac
 
 *35
 
 cordingly, we also reverse the final judgment in favor of Federal as Rago’s surety.
 

 III.
 
 Rago’s Cross-Appeal
 

 On cross-appeal, Rago seeks review of the entry of a final summary judgment in its action against ABC. The trial court granted final summary judgment on the issue of licensure against Rago. Rago argues on cross-appeal that it was not an unlicensed contractor under section 489.128, Florida Statutes (2009). We agree and reverse the summary judgment as to Rago.
 

 As amended in 2009, section 489.128(l)(a), Florida Statutes, provides:
 

 (1) As a matter of public policy, contracts entered into on or after October 1, 1990, by an unlicensed contractor shall be unenforceable in law or in equity by the unlicensed contractor.
 

 (a) For purposes of this section, an individual is unlicensed if the individual does not have a license required by this part concerning the scope of the work to be performed under the contract. A business organization is unlicensed if the business organization does not have a primary or secondary qualifying agent in accordance with this part concerning the scope of work to be performed under the contract. For purposes of this section, if a state license is not required for the scope of work to be performed under the contract, the individual performing that work is not considered unlicensed.
 

 § 489.128(l)(a), Fla. Stat. (2009) (emphasis added). The trial court, in granting final summary judgment, applied a prior version of the statute and determined Rago to be unlicensed and unable to enforce its contract against ABC and its surety, Federal. We note that “[effective [June 16, 2009], the amendments made ... to ss. 489.128(l)(a) and 489.532(l)(a), Florida Statutes, shall apply retroactively to contracts entered into on or after October 1, 2000, and shall apply retroactively to all actions pending when this act becomes law.” Ch. 2009-195, § 66, at 1972, Laws of Fla.;
 
 MGM Constr. Servs. Corp. v. Travelers Cas. & Surety Co. of Am.,
 
 57 So.3d 884 (Fla. 3d DCA 2011). Under the facts of this case, the 2009 version of the statute applies retroactively to the contract between Austin and Rago.
 

 Austin and Federal argue that even under section 489.128, as amended in 2009, Rago would still be considered unlicensed because the last sentence in section 489.128(l)(a) is applicable only to an “individual” and not a “business organization.” We disagree. In a recent case, the Fourth District reversed a summary judgment against a business organization on the identical issue of licensure.
 
 A-1 Quality Corp. v. Oak Park Terrace, Inc.,
 
 32 So.3d 166 (Fla. 4th DCA 2010). In
 
 A-l,
 
 the trial court had granted summary judgment after determining that, under section 489.128, Florida Statutes (2007), the business organization could not enforce its contract because it was an unlicensed contractor.
 
 A-l Quality Corp.,
 
 32 So.3d at 166. On appeal, the Fourth District found that the contract was ambiguous as to whether the business organization would perform services requiring a contractor’s license, and citing section 489.128(l)(a), Florida
 
 *36
 
 Statutes (2007),
 
 [3]
 
 reversed the summary judgment.
 
 A-l Quality Corp.,
 
 32 So.3d at 167.
 

 Similarly, applying a nearly identical statute, the Fourth District reversed a judgment against a business organization that sold and installed audio systems.
 
 MMII, Inc. v. Silvester,
 
 42 So.3d 876 (Fla. 4th DCA 2010). The business organization had contracted to design and install an entertainment system for- some buyers.
 
 Id.
 
 at 877. When the buyers refused to pay, the business organization filed suit.
 
 Id.
 
 The buyers argued that the business organization could not enforce its contract either at law or in equity because it was an unlicensed electrical contractor.
 
 Id.
 
 In reversing, the Fourth District held that the business organization did not meet the statutory definition of an electrical contractor mandating licensure, and therefore, absent the requirement of a state license, could not be deemed unlicensed under section 489.532(l)(a), Florida Statutes (2009).
 
 [4]
 

 MMII, Inc.,
 
 42 So.3d at 878. We note that although
 
 MMII, Inc.
 
 involved the application of a different a section of Chapter 489 to a business organization, the language in section 489.532(l)(a), Florida Statutes (2009), is identical to the pertinent language in section 489.128(l)(a), Florida Statutes (2009).
 

 We agree with the Fourth District in its application of section 489.128(l)(a), and the similar provision of 489.532(l)(a), to the issue of licensure as it relates to business organizations.
 

 Moreover, the statutory scheme of Chapter 489 demonstrates that a business organization’s ability to engage in contracting is inextricably reliant upon the licen-sure of the qualifying agent, who in turn, must be an individual person. A business organization cannot in itself be authorized to engage in contracting absent a qualifying agent.
 
 See
 
 § 489.119, Fla. Stat. (2009). As such, the phrase “the individual performing that work” in section 489.128(l)(a) would have little consequence if it could not also apply to an individual serving as a qualifying agent for a business organization.
 

 Chapter 489 sets forth the relationship between the licensed contractor and his/ her business organization. The Chapter explains that, for purposes of determining contracting licensure under section 489.128(l)(a), “[a] business organization is unlicensed if the business organization does not have a primary or secondary qualifying agent .... ” § 489.128(l)(a), Fla. Stat. (2009). Section 489.105, Florida Statutes, defines qualifying agents as follows:
 

 (4) “Primary qualifying agent” means a person who possesses the requisite skill, knowledge, and experience, and has the responsibility, to supervise, direct, manage, and control the contracting activities of the business organization with which he or she is connected; who has the responsibility to supervise, direct, manage, and control construction activities on a job for which he or she has obtained the building permit; and
 
 *37
 
 whose technical and personal qualifications have been determined by investigation and examination as provided in this part, as attested by the department.
 

 (5) “Secondary qualifying agent” means a person who possesses the requisite skill, knowledge, and experience, and has the responsibility to supervise, direct, manage, and control construction activities on a job for which he or she has obtained a permit, and whose technical and personal qualifications have been determined by investigation and examination as provided in this part, as attested by the department.
 

 § 489.105(4)-(5), Fla. Stat. (2009) (emphasis added).
 

 Section 489.119 further expounds on the relationship between a business organization and its qualifying agent.
 

 (1) If an individual proposes to engage in contracting in the individual’s own name, or a fictitious name where the individual is doing business as a sole proprietorship, registration or certification may be issued only to that individual.
 

 (2) If the applicant proposes to engage in contracting as a business organization, including any partnership, corporation, business trust, or other legal entity, or in any name other than the applicant’s legal name or a fictitious name where the applicant is doing business as a sole proprietorship, the applicant must apply for registration or certification as the qualifying agent of the business organization.
 

 § 489.119(l)-(2), Fla. Stat. (2009) (emphasis added).
 
 [5]
 
 In the event a qualifying agent ceases his involvement with a business organization, the business organization “shall have 60 days from the termination of the qualifying agent’s affiliation with the business organization in which to employ another qualifying agent.” § 489.119(3)(a), Fla. Stat. (2009). Most importantly, section 489.119 clearly states that in such a situation, “the business organization may not engage in contracting until a qualifying agent is employed ....”
 
 [6]
 

 Id.
 
 (emphasis added).
 
 [7]
 

 Based upon the foregoing, we find that the trial court erred in granting final summary judgment as to Rago on the issue of licensure and accordingly, we reverse the entry of summary judgment against Rago. Consequently, we also reverse the final judgment in favor of Federal as surety for ABC.
 

 Reversed and remanded.
 

 [1]
 

 . Because Federal was the surety for both Rago and ABC, it joined in each of their respective motions for summary judgment.
 

 [2]
 

 . We also note that viewing the evidence in the light most favorable to the non-movant,
 
 *35
 
 there are genuine issues of material fact as to the extent of ACLP’s and ABC's knowledge of Rago's unlicensed status at the time Rago was engaged to perform the work and at the time the Subcontract was executed, thereby precluding entry of summary judgment on the basis of the parties being
 
 in pari dilecto. Castro v. Sangles,
 
 637 So.2d 989, 991 (Fla. 3d DCA 1994); Restatement (Second) of Contracts § 178 (1981);
 
 see
 
 Black's Law Dictionary 806 (8th ed. 2004) (under the
 
 in pari dilecto
 
 doctrine, a "plaintiff who participated in a wrongdoing may not recover damages resulting from the wrongdoing”).
 

 [3]
 

 . "For purposes of this section, if no state or local license is required for the scope of work to be performed under the contract, the individual performing that work shall not be considered unlicensed.” § 489.128(l)(a), Fla. Stat. (2007). While the 2009 amendment of section 489.128(l)(a) changed this language to "[f]or purposes of this section, if a state license is not required for the scope of work to be performed under the contract, the individual performing that work is not considered unlicensed,” the analysis and application of the statute to a business organization remain analogous.
 

 [4]
 

 . "[I]f a state license is not required for the scope of work to be performed under the contract, the individual performing that work is not considered unlicensed.”
 

 [5]
 

 . We are cognizant that diere are three very limited exceptions under which a business organization may act as a contractor without applying for or obtaining authorization under section 489.119.
 
 See
 
 § 489.119(7)(a)l-3, Fla. Stat. (2009). These exceptions, however, are inapplicable here.
 

 [6]
 

 . While not applicable here, under certain circumstances, a "temporary nonrenewable certificate or registration” may be issued to a business organization following the departure of a qualifying agent.
 
 See
 
 § 489.119(3)(a), Fla. Stat. (2009).
 

 [7]
 

 . The legislative history of section 489.128 also supports our conclusion. As set forth in a staff analysis of House Bill 1351, which amended section 489.128 in 2006 to include substantially the same provision we now examine in the 2009 version of the statute, "[w]ith certain statutorily specified exceptions, individuals who practice contracting in Florida must be certified (i.e., licensed by the state to contract statewide) by or registered (i.e., licensed by a local jurisdiction and registered by the state to contract work within the geographic confines of the local jurisdiction only) with the CILB or ECLB, as appropriate.” Fla. H.R., Staff Analysis HB 1351 (2006) at 1 (March 28, 2006).