## Baskett v. Jones.

(Decided September 28, 1920.)

### Appeal from Henderson Circuit Court.

1. Contracts—Contract Prohibited by Statute.—Where a contract is prohibited or declared by the statute to be unlawful, before complying with prescribed conditions, until the conditions are complied with, it is void, regardless of the purpose for which the statute was enacted.

2. Contracts—License to Engage in Taxed Occupation.—The rule generally prevailing is, that a statute enacted purely for revenue purposes, and which does not prohibit nor declare unlawful the making of contracts, without first having obtained a license to engage in the taxed occupation, nor declares such contracts to be void, does not make void a contract made without first having obtained a license to engage in a taxed occupation.

3. Brokers—When Not Entitled to Compensation.—Where brokers present a prospective purchaser to their employer, and the person presented is not ready, able and willing to purchase the property upon the terms proposed, and thereupon the negotiations cease, and when no negotiations are pending, the employer in good faith and not for the purpose of evading the payment of commissions, withdraws the authority of the brokers, they are not entitled to commissions, although thereafter the employer sells the property to the same person presented by the brokers.

4. Brokers—Compensation.—If negotiations are still pending with the prospective purchaser, and the employer in bad faith and for the purpose of evading the payment of the commissions revokes the authority of the broker, and thereafter continues and completes the negotiations with the person presented by the brokers, they will be entitled to the promised commission.

5. Brokers—Compensation.—A broker should be considered the procuring cause of a sale, when he presents a prospective purchaser and upon a failure of the employer and the prospect to agree upon terms and the employer without the consent of the broker, and to evade the payment of commissions, and to benefit by the efforts of the broker, revokes the broker's authority and breaks off the negotiations and thereafter makes a sale of the property to the same person, who was procured by the broker.

VANCE & HEILBRONNER for appellant.

HENSON & TAYLOR for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, Miley Baskett, was the owner of a farm near Henderson, Ky., which he was desirous of selling. The appellee, William J. Jones, was engaged in soliciting applications for insurance and selling farm lands for a commission, and for such purposes, maintained an office within the corporate limits of the city of Henderson. The appellant and appellee entered into a contract, the terms of which, it is admitted, were embraced in a writing which was subscribed by the appellant and delivered to the appellee, and which is as follows:

"Henderson, Ky., July 9, 1918.

"I, Miley Baskett, being the owner of the following described property, to-wit, one farm, situated on the Zion road, about one mile from Henderson, Ky., consist-

ing of one hundred eighteen (118) acres, more or less, known as the George Ragan farm, being desirous of selling same, hereby authorize William J. Jones to procure a purchaser for same, at the price of thirty-five thousand dollars ($35,000.00) on the following terms, fifteen thousand dollars ($15,000.00) in cash, the balance payable in yearly installments as may be agreed on by me and the purchaser, or on such other price or terms as I may hereafter agree to accept. Upon the procurement of a purchaser by the said Jones, I agree to pay him a commission of three per cent on whatever price the farm is sold for, payable when deed made transferring same to purchaser, out of the cash payment made for same.

"MILEY BASKETT."

Within a day or two after the making of the contract, between him and appellant, the appellee communicated with an acquaintance of his, by the name of Eugene O'Donnell, who resided in Daviess county, and whom he knew was desirous of purchasing a farm and procured O'Donnell to come at once to Henderson for the purpose of examining the farm. He took O'Donnell in a buggy, to appellant's farm, where in company with appellant, the farm was shown to O'Donnell, and appellee urged upon him to become the purchaser of the farm. It does not appear that previous to this time, appellant and O'Donnell were acquaintances, but it does appear that O'Donnell did not know that the farm was for sale until informed by appellee, and brought to meet the appellant. O'Donnell was pleased with the farm, and desired to purchase it, but was not willing to give the price of thirty-five thousand dollars ($35,000.00) and so informed Baskett, and a sale of the farm was thus, at that time, not effected, because appellant and O'Donnell did not agree upon the terms. However, O'Donnell deposes that he desired to buy it and continued, actuated by that desire, until the sale was finally made to him, as will be hereinafter related. Appellee deposes that he continued to negotiate with O'Donnell with reference to a sale of the farm to him and O'Donnell came to Henderson twice thereafter, at periods a few days apart, and on each occasion, visited the office of the appellee and discussed with him concerning the farm. On his third visit, O'Donnell was introduced by some one to John Jesse Baskett, who was a real estate broker, and a second cousin of the appellant, and John Jesse was informed of the fact that O'Donnell was in the city with a view to purchasing a

farm. John Jesse informed O'Donnell that he had several farms listed with him for sale, and on the following day he took O'Donnell out into the neighborhood of the farm of appellant, and endeavored to sell him a farm which was owned by a lady of the name of Howard, and which adjoined the farm of appellant. O'Donnell made an offer for that farm, but John Jesse never communicated the offer to the owner. On the same day O'Donnell informed John Jesse that the farm of appellant was for sale, and that he had been shown it, a few days previously, by the appellee. John Jesse then insisted upon O'Donnell's going and again looking at the farm of appellant, and together they drove by it on their way back to Henderson, from where O'Donnell again returned to his home. Upon receipt of the information from O'Donnell that the farm of appellant was for sale, and doubtless, also, learning that O'Donnell desired to purchase the farm, if he could secure it for a less price than it had been offered to him up to that time, John Jesse called upon the appellee and proposed that if he would divide the commission for a sale of the farm with him, he would assist him in selling the farm to O'Donnell, but this proposition the appellee declined, and immediately John Jesse visited his relative, the appellant, as he says, to procure "information." The reason given by John Jesse for calling upon the appellee and proposing to divide the commission for a sale of appellant's farm, and for calling on the appellant, as he says, for "information," is that he didn't want to be in the way of appellant making a sale of his farm, but deposes by his further testimony, that he engaged very seriously in persuading the appellant to reduce the price of the farm to the price which O'Donnell was willing to give for it. When John Jesse called upon the appellant, he learned from him what he already knew, that appellant had a contract with the appellee to procure him a purchaser for the farm, and deposes that appellant said that he could not do anything with reference to it, on account of that contract, but would give him further information within a few days. About this time, the appellant visited the appellee, at half past eleven o'clock, at night, and informed appellee that he was going to sell the farm and proposed to pay him five hundred dollars ($500.00), which appellee declined, saying to appellant that if he sold the farm to any one other than O'Donnell he would not owe him anything, but if he sold it to O'Donnell he would owe him three per

centum of the price.  About this time, appellee learned that appellant would agree to sell the farm for thirty thousand dollars ($30,000.00), and after conferring over the telephone with appellant about it, he again visited O'Donnell at his home in Daviess county and urged him to purchase the farm at that price, but O'Donnell yet declined to purchase it at that sum.  In the meantime, at the solicitation of John Jesse Baskett, O'Donnell had stated that he would give twenty-five thousand dollars ($25,000.00) for the farm, but requested John Jesse to inquire of appellant and learn what would be the smallest sum at which he would sell the farm and received the information that thirty thousand dollars ($30,000.00) was the smallest sum for which it could be purchased.  On the 22nd day of July, following the making of the contract and negotiations heretofore related, the appellant, accompanied by John Jesse Baskett, had prepared and sent a letter, to the appellee informing him to the effect that if he did not succeed in procuring a purchaser for the farm by the noon hour, on the 24th day of July, the contract between them would stand abrogated, and the authority to appellee to secure a purchaser for it would be withdrawn.  The reasons given in the letter for this action were that appellant had been drafted for service in the army and had been ordered to report for duty, and wanted to dispose of the farm before his departure for the army.  John Jesse deposes that after the writing and transmission of this letter the appellant said to him, that he could then "go ahead."  O'Donnell deposes that he was at all times ready and willing and able to enter into a contract with appellant for the purchase of the farm at the sum of twenty-five thousand dollars ($25,000.00).  On the 18th day of August, evidently in answer to a letter to him from John Jesse Baskett, O'Donnell wrote the latter that "if he could make the trade to do so" and to notify him. O'Donnell received a letter dated at Meridian, Miss., on the 22nd of August, from John Jesse, informing him that he would endeavor to buy the farm for him for twenty-five thousand dollars ($25,000.00), but to say nothing about it until he should be able to get the deal closed up.  O'Donnell received a telegram from John Jesse directing him to meet him in Henderson on the 30th.  O'Donnell went to Henderson on the 30th, but John Jesse had failed to arrive, and appellant refused to sell the farm for twenty-five thousand dollars ($25,000.00) unless O'Donnell would buy certain tools

he had at one hundred twenty-two dollars and fifty cents ($122.50), which O'Donnell agreed to do, and thereupon they agreed upon the contract by which O'Donnell was to purchase the farm for the sum of twenty-five thousand dollars ($25,000.00), and an additional sum of one hundred twenty-two dollars and fifty cents ($122.50) for certain tools, and on the following day O'Donnell and appellant reduced the contract to writing and subscribed it. John Jesse, in the meantime, had arrived from Mississippi, and was present when the writing was signed. He deposes that he did not charge appellant any commission for the sale, but appellant paid him one hundred fifty dollars ($150.00) in the way of paying his expenses about the consummation of the deal. Thereafter, in accordance with the contract entered into between O'Donnell and appellant, on the 15th day of November, appellant conveyed the farm to O'Donnell and received in payment, the remaining balance due upon it, less the sum of eight hundred and fifty dollars ($850.00) which seems to have been attached in his hands, and which he paid into the court, and to which Lee Baskett, one of the appellants, is now setting up claim, under a transfer thereafter made to him by the appellant. When the executory contract was made, by which the farm and tools were sold to O'Donnell, the appellee gave notice to appellant that he was relying upon his contract with him and expected him to pay him a commission for procuring a purchaser for it, as per their contract. After appellant conveyed the land to O'Donnell, he failed to pay any commission to the appellee, who thereupon instituted this action against him for recovery. The appellant by his answer, denied that appellee had procured a purchaser for the farm, and also, pleaded that he had withdrawn the farm from appellee and revoked the right of appellee to procure a purchaser for it, long before a sale had been made, and further interposed a plea that the contract entered into between him and appellee was void, because at the time that the contract was made and negotiations conducted by appellee with O'Donnell, there was an ordinance in full force and effect, in the city of Henderson, which made it unlawful for any one to engage in the business of selling lands for a commission, unless such person had theretofore procured a license so to do, and paid the license tax required by the ordinance and that in violation of that ordinance, the appellee was conducting the business of a real estate broker within the limits of the city of Henderson, with-

out having procured any license authorizing him so to do, or having paid the license tax required, and for that reason was not authorized to receive any compensation for the services claimed by him, under the contract with him. To that portion of the answer of appellant which pleaded that the contract for the sale of the farm between appellant and appellee was abrogated because of the failure of appellee to procure a purchaser on or before noon of July 24th, the appellee denied the right of appellant to withdraw and rescind the contract, and alleged that at the time, it was attempted to be done by appellant, negotiations were then pending for the sale of the farm to O'Donnell, whom appellee had procured as a prospective purchaser, and that the withdrawal of the farm from him, by appellant, was done in bad faith, and for the purpose of enabling appellant to evade the payment of the commission which he had promised for the procurement of a purchaser of his farm.

A trial resulted in a verdict in favor of appellee for the sum of seven hundred and fifty dollars ($750.00) which amount is three per cent upon the sale price of the farm, and from a judgment upon that verdict, the appellant appealed.

A reversal of the judgment is insisted upon for three reasons, viz.:

(1) Error of the trial court in refusing to direct a verdict for appellant, at the close of the evidence for appellee and at the close of all the evidence.

(2) Errors made to the prejudice of appellant, in the instructions to the jury.

(3) Errors made in rulings admitting and rejecting evidence.

(a) It is insisted that a verdict should have been directed by the court in favor of appellant for two reasons.

(1) Because the pleadings and evidence showed without dispute, that the contract under which appellee was claiming was void and unenforcible because made in violation of the ordinance of the city.

(2) Because, the evidence proved without dispute that the purchaser to whom the farm was sold was not procured by appellee, and that he was not the procuring cause of the sale.

(1a) The answer averred, that at the time, the contract between appellant and appellee was entered into, and at the time all the negotiations for the sale of the farm were conducted, there was in full force an ordinance

of the city, which had been duly enacted, the title of which was as follows:

"An ordinance imposing a license tax or fee upon certain business, occupations and professions carried on or held within the city of Henderson, Kentucky, requiring all persons pursuing same to first obtain a license therefor, and imposing penalties for engaging in any such business, occupation or profession without a license."

It was, also, averred, as follows: "That the first section of subsection 90 of said ordinance provides:

" 'For each person or firm engaged in the business of buying or selling real estate on commission, per year, $25.00.'

"Section 2 of said subsection provides, among other things:

" 'Before engaging in any business, occupation or profession mentioned in the first section of this ordinance or pursuing or carrying on the same within the limits of the city of Henderson, Kentucky, the person, firm or corporation shall first pay the fee mentioned in the first section and the various subsections of this ordinance and obtain a license so to do.' "

It is then averred that the appellee did not have a license authorizing him to engage in the business or follow the occupation of a real estate broker and was a resident of the city and carried on the business therein. A copy of the entire ordinance was not filed with the pleadings nor offered in evidence. The reply did not deny the existence of the ordinance, as set out in the answer, nor avoided its effect by alleging that there were any terms of the ordinance not set out in the answer, which changed or altered the effect of the portions of the ordinance, which were set out. The evidence was undisputed, that while the contract between appellant and appellee was entered into without the limits of the city, all the other negotiations about the sale of the land except the visit of appellee to Daviess county, were carried on at the office of appellee within the city, and that he maintained an office in the city for the purpose and engaged in the business of a real estate broker, without a license, and it seems to us to be immaterial whether or not he confined his operations to lands without or within the city. It will be observed, however, that from so much of the ordinance, as is pleaded, there is nothing which prohibits or makes unlawful the engaging in the business of a real estate broker, in the city of Henderson, without first hav-

ing procured a license so to do and paid the tax required by the ordinance to be paid upon that occupation, and there is no penalty prescribed by the ordinance for engaging in the business, without a license, from which it can be inferred, that it was the intention of the makers of the ordinance to make that occupation unlawful or to prohibit it without a license. So far as it appears from the ordinance, as pleaded or shown, it simply levies a license tax of $25.00 per year, for engaging in the business of buying or selling real estate on commission, but, in no wise prohibits or makes the business unlawful, if engaged in without a license or without having paid the tax. It might be inferred, from subsection 2, of section 90, of the ordinance, which is set out in the answer, that it was intended to prohibit and make unlawful the engaging in certain occupations, businesses and professions, in the city, without first having obtained a license and paid the taxes required, but, by the terms of that subsection, the only businesses, occupations and professions which it declares, shall not be engaged in until a license is obtained and the taxes required, are paid, are such occupations, professions and businesses, as are mentioned in the first section of the ordinance. The first section of the ordinance is not set out in the answer, nor even, if that was sufficient, is it alleged, that the business of a real estate broker is one of those mentioned in the first section of the ordinance, and it can not be assumed, that it includes the business of a real estate broker, as the courts can not take judicial notice of the ordinances of any city, except one of the first class, of which class Henderson is not. Hence, the ordinance, so far as the court could have had knowledge, as relating to the business of a real estate broker, only required the payment of a tax by one engaged in that occupation. The ordinance, so far as it appears, as relating to such a business, is purely a revenue statute. The rule generally prevailing is, that a statute enacted purely for revenue purposes, and which does not prohibit nor declare unlawful the making of contracts, without first having procured a license to engage in the taxed occupation, nor declares such contracts void, does not render void a contract made without first having obtained a license to engage in an occupation, for which a license tax is paid. However, where a contract is prohibited by statute or declared by the statute to be unlawful, before complying with conditions prescribed, it is void, whether the statute was enacted for revenue pur-

poses or for any other purpose. As a rule, a law which is
intended to prohibit, restrict or to regulate a business or
is intended in part for the protection of the public from
fraud in contracts or to promote a public policy, a con-
tract made in violation of such law is void, but, where the
intention of the law is purely to operate on a person for
the purpose of compelling him to pay a tax, a contract
made without having observed its requirements is not
void. Fruin-Colnon Contracting Co. v. Chatterson, 146
Ky. 504; Smith v. Robertson, 106 Ky. 472; Vanmeter v.
Spurrier, 94 Ky. 22; Lindsey v. Rutherford, 17 B. M. 248;
Bell v. Harrigan, 17 B. M. 352; Oliver Co. v. Louisville
Realty Co., 156 Ky. 628; Franklin Ins. Co. v. L. & A. P.
Co., 9 Bush 590; Buckley v. Humason, 16 L. R. A. 423;
Woods v. Armstrong, 25 Am. Rep. 671; Taliferro v.
Moffett, 54 Ga. 152; Aiken v. Blaisdell, 41 S. C. 667; Sol-.
omon. v. Dreschler, 4 Minn. 278.

(2a) Touching the second ground upon which it is
insisted that a verdict ought to have been directed for
appellant, it is contended, that inasmuch as the contract
between appellant and appellee did not fix any time,
within which the appellee might exercise the authority
granted to him, to procure a purchaser, the appellant was
authorized to revoke the authority at any time, and that
all the evidence conduces to prove, that although appel-
lant procured O'Donnell as a prospective purchaser and
brought him into negotiations with the appellant,
O'Donnell was not ready nor willing to purchase the land
upon the terms proposed and declined to do so, and after
negotiations had ceased between appellant and O'Don-
nell, the appellant in good faith revoked the authority of
appellee to secure a purchaser, and for that reason the
appellee was not the procuring cause of the sale of the
land, although thereafter the land was sold to O'Donnell
by appellant through John Jesse Baskett. In support of
the contention the cases of Coleman v. Meade, 13 Bush
359, and Stedman, etc. v. Richardson, 100 Ky. 79, are ap-
pealed to. The facts of the instant case are, however,
different from those in the cases cited. In the latter case,
the evidence was undisputed, that although the brokers
had presented a person as a prospective purchaser of the
property to the employer, the person presented was not
ready or willing to purchase the property upon the terms
proposed, and thereupon the negotiations ceased, and
when no negotiations were pending, the employer, in
good faith and not with the purpose of evading the pay-

ment of the commission, which he had promised upon the finding of a purchaser, revoked the authority of the brokers, and thereafter sold the property to the same person, to whom the brokers had called his attention, and it was held under that state of facts, that the brokers were not the procuring cause of the sale and hence were not entitled to any commissions, and with the principles of that opinion we have no disagreement, and if the same facts appeared from the undisputed evidence, in this case, the same principle would apply. It may be accepted as a settled principle applicable to such transactions, that one who contracts with a broker to procure a purchaser for property, and where no time is prescribed in the contract, within which the broker must exercise his authority by procuring a person who is able, ready and willing to become a purchaser upon the terms proposed, after a reasonable time, he may revoke the authority, if done in good faith and for the better prosecution of his business, and end the broker's right to a commission, but, if negotiations are yet pending with the prospective purchaser and the authority of the broker is revoked by the employer, in bad faith and to evade the payment of the promised commission and to avail himself of the benefits of the broker's efforts, by continuing and completing the negotiations then pending, the employer will not be relieved from the payment of the commissions. It furthermore, seems just, that the broker should be considered the procuring cause of a sale where he presents to an employer a prospective purchaser, and upon a failure of the employer and prospective purchaser to agree upon the terms, the employer without the broker's consent, and to evade the payment of the commission promised for a sale and to benefit by the efforts of the broker, revokes the authority of the broker and breaks off negotiations with the prospective purchaser, and then thereafter makes a sale of the property to the same person procured by the broker. Stedman v. Richardson, *supra;* Treacy v. Gilman, 161 Ky. 517. It will be observed, that under the terms of the contract sued on, appellant was bound for the commission, if a sale was made upon the terms stated, or if made, at such other price or terms as might be thereafter agreed to by appellant, and the fact that appellant and the prospective purchaser procured by appellee did not agree upon the terms, at their first meeting, did not absolve appellant from the payment of the commissions, if a sale was thereafter made to the prospective purchaser

presented upon different terms, and the appellee was the procuring cause of the sale; and appellant could not relieve himself from liability by revoking the authority of appellee, where the property was thereafter sold by appellant to the prospective purchaser procured by the appellee, if the revocation was in bad faith and for the purpose of evading the payment of the commission. There was evidence which conduced to prove that appellee was the procuring cause of the sale and, further, that the revocation was made while the negotiations were still pending, and for the purpose of evading the payment of the commission and thus to enable appellant to benefit himself by the exertions of appellee and at the same time to avoid his own liability. Under the facts in the evidence, these were questions to be determined by the jury.

(2) The criticism of the instructions is not merited, as they presented to the jury the issues to be decided, in accordance with the principles governing the action, as heretofore defined.

(3) The appellee offered the pleadings in evidence and the court intimated, that he might introduce the answer, and an order was then entered, by which it was ordered that the answer should be considered as read, but, in fact was not read to nor considered by the jury. Before any evidence for appellant was offered, the appellee withdrew his offer to introduce the answer as evidence, and over the objection of appellee was permitted to withdraw it as evidence. The only grounds upon which the answer could have been competent, as evidence for appellee, would have been that it contained admissions against the interests of appellant, if it did contain such; but, if received as evidence for appellee, the appellant was entitled to the benefit of all the facts which it was competent to prove, but, it does not appear in what way the rights of appellant were prejudiced by permitting the answer to be withdrawn as evidence against him, when it had not actually been heard by the jury.

The judgment is therefore affirmed.