Anthony FISHER, Appellant

v.

COMMONWEALTH of Kentucky, PUBLIC PROTECTION CABINET, DEPARTMENT OF HOUSING, BUILDINGS AND CONSTRUCTION, DIVISION OF PLUMBING, Appellee.

No. 2011–CA–001951–MR.

Court of Appeals of Kentucky.

June 14, 2013.

Clayton B. Patrick, Frankfort, KY, for appellant.

Dawn Michele Bellis, Frankfort, KY, for appellee.

Before ACREE, Chief Judge; MOORE and TAYLOR, Judges.

## OPINION

MOORE, Judge:

Anthony Fisher appeals the Franklin Circuit Court's order affirming the Department of Housing, Buildings and Construction's (hereinafter "DHBC") decision to revoke his master plumber's license. Because we agree with the result that was reached in this matter, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

The issue in this case is the extent of an administrative agency's authority to grant a professional license to a convicted felon.

This case began on October 19, 2009, when DHBC, through its Division of Plumbing, issued Anthony Fisher a master plumber's license. By implication, this license permits an individual to work unsupervised inside of any building, including schools and private residences, regardless of who might be on the premises.[1] A few months afterward, DHBC received an anonymous complaint that Fisher was a sex offender. Upon conducting a brief review of the Kentucky State Police's internet-based sex offender registry, DHBC discovered that Fisher was indeed a sex offender and had been registered as such well prior to the issuance of his master plumber's license. Specifically, it discovered that Fisher had been imprisoned between May 2002 and August 2006 for a period of approximately 50 months after having pled guilty to committing two felony counts of sodomy, and one felony count of incest, against a child less than twelve

---

1. Pursuant to Kentucky Revised Statute (KRS) 318.010(3), a "master plumber" means a person who assumes responsible charge, supervision, or direction of journeyman plumbers...." "Plumbing" is defined as "the art of installing in buildings the pipes for distributing the water supply ... within or adjacent to the building." KRS 318.010(4).

years of age. For that reason, DHBC sent Fisher a letter on February 23, 2010, stating in relevant part:

> This letter is to inform you that the Department of Housing, Buildings and Construction is seeking to revoke your Master plumbing license referenced above pursuant to KRS 318.066.
>
> Violations of KRS 318.040 and KRS 318.064 and your status as a sex offender in the Commonwealth of Kentucky are the basis for the sanction proposed. KRS 318.040(1)(b) requires an applicant for a master plumber's license to, "Be of good moral character;". KRS 318.064(5) states the Department may revoke a plumber's license when the plumber is, ". . . guilty of such other unprofessional or dishonorable conduct of a character likely to deceive or defraud the public."
>
> Records from the Metcalfe Circuit Court indicate the Court accepted your guilty plea to two counts of sodomy (2nd degree) and one count of incest on July 18, 2003. On August 5, 2003, the Court imposed a final sentence in the case. Because of the conviction on these charges, the Department believes you were not "of good moral character" at the time you applied for a plumbing license in 2009. Further, the Department believes your failure to disclose your prior criminal history was an effort to deceive and defraud the public and this Department. As a result, the Department is seeking to revoke your Master plumbing license.

DHBC's letter further advised Fisher of his right to request a hearing on this matter. Fisher did so; a hearing was held on June 22, 2010; and the focus of this matter became the interplay between KRS 318.040 and KRS 318.064, and whether those statutes provided DHBC with a basis for revoking Fisher's master plumber's license under the circumstances.

As an aside, DHBC's letter highlights one of two problems that would continue throughout the procedural history of this case, namely, that the parties and the various reviewing tribunals ultimately became convinced that this matter turned upon an interpretation of KRS 318 *et seq.*, the statutes that ordinarily govern the plumbing profession in Kentucky. KRS 318.040(1)(b), which provides that an applicant for a master or journeyman plumber's license shall be "of good moral character," might be understood to mean that an applicant with a prior felony conviction could be rejected, for that reason, on the basis of having bad moral character.[2] Similarly, one or more of the bases for revoking a plumber's license specified in KRS 318.064 might be understood to encompass a prior felony conviction.[3]

---

2. Section (1) of KRS 318.040 provides that "An applicant for a master or journeyman plumber's license shall:
(a) Be at least eighteen (18) years of age;
(b) Be of good moral character;
(c) Be a citizen of the United States or be a resident alien who is authorized to work in the United States; and
(d) Possess all the other qualifications that may be prescribed by administrative regulations of the commissioner.

3. In its entirety, KRS 318.064 provides that "The department may revoke or suspend any plumber's license issued by it upon proof that the licensee has:

(1) Knowingly violated the provisions of this chapter or the Kentucky State Plumbing Code, or the rules and regulations of the department;
(2) Practiced fraud or deception in applying for or obtaining a license;
(3) Is incompetent to perform services as a licensed master plumber or a licensed journeyman plumber;
(4) Permitted his or her license to be used directly or indirectly by another to obtain or perform plumbing work or services; or
(5) Is guilty of such other unprofessional or dishonorable conduct of a character likely to deceive or defraud the public.

However, neither of these statutes imposes a clear duty upon an applicant or licensee to report a prior felony conviction to DHBC; DHBC has never promulgated any regulation to that effect; and, to the extent that a statute in KRS 318 *et seq.* could supply a basis for granting, denying, renewing, suspending, or revoking a license with regard to individuals convicted of felonies, high misdemeanors, and misdemeanors for which a jail sentence may be imposed (*i.e.,* by characterizing such offenses as evincing a "lack of good moral character," "unprofessional conduct," or anything else), those statutes have been superseded by KRS 335B *et seq. See* KRS 335B.010(4); KRS 335B.060.

In actuality, KRS 335B.020 provides the guiding rule of law in this matter. Fisher's felony convictions of sodomy and incest fall within the category of offenses described in KRS 335B.010(4). Section (1) of KRS 335B.020 generally prohibits DHBC and a wide array of other agencies from licensing any person convicted of those types of offenses:

> (1) No person *shall* be disqualified from public employment, nor *shall* a person be disqualified from pursuing, practicing, or engaging in any occupation for which a license is required solely because of a prior conviction of a crime, *unless* the crime for which convicted is one described in KRS 335B.010(4) or otherwise directly relates to the position of employment sought or the occupation for which the license is sought.

(Emphasis added.)

The one exception to this general rule is contained in section (3) of KRS 335B.020:

> (3) Nothing in KRS 335B.020 to 335B.070 *shall* be construed so as to limit the power of the hiring or licensing authority to determine that an individual shall be entitled to public employment or a license regardless of that individual's conviction *if* the hiring or licensing authority determines that the individual has been successfully rehabilitated.

(Emphasis added.)

Thus, as further explained by an opinion of the Kentucky Attorney General on this subject:

> The conviction of a felony requires a licensing board to deny a license unless it determines that the applicant has been successfully rehabilitated. KRS 335B.020(3). This is just another way of saying that the licensing authority has the responsibility to determine whether the applicant is morally fit for the occupation covered by the license. It also places upon the applicant the burden of demonstrating to the licensing authority that he has been rehabilitated since his conviction of a felony.

Kentucky Attorney General Opinion (Ky. OAG) 80–388.[4]

In short, KRS 335B.020 identifies two mandatory duties of DHBC that are relevant to this matter: 1) a continuing duty to be apprised of the criminal background of its licensees and those applying for its licenses; and 2) a duty to make a determination, prior to issuing any convicted felon a license or renewing the same, that the convicted felon in question has been rehabilitated. Stated differently, DHBC only had the authority to grant Fisher a master plumber's license *if, before* it issued that license, it had *already* made

---

4. While we are not bound by opinions of the Attorney General, this Court can afford them great weight. *Louisville Metro Dept. of Corrections v. King,* 258 S.W.3d 419, 421–22 (Ky. App.2007) (citation omitted). Our review of this OAG opinion reveals that the OAG's interpretation of KRS 335B *et seq.* is carefully considered, clearly stated, and based upon a correct understanding of the law.

a determination that Fisher had been successfully rehabilitated.

The second problem inhering in this case was touched upon by Tim House, the Director of DHBC's Division of Plumbing, during his testimony at the June 22, 2010 hearing. As his title indicates, House and his staff are responsible for determining whether applicants qualify for plumbing licenses. According to House, the Division of Plumbing follows a policy of presuming that every one of its applicants has good moral character. Therefore, as House testified, the Division of Plumbing conducts no inquiry regarding the moral character of its applicants or licensees prior to issuing or renewing any plumbing licenses. This policy is further reflected in Fisher's master plumber's license application itself, which was entered into evidence at the hearing. The application directed Fisher to verify his age and citizenship, which are both prerequisites to licensure. *See* KRS 318.040(a) and (c). It directed Fisher to verify his experience and notified him about the necessity of passing DHBC's examination, which were also prerequisites. *See* KRS 318.040(d). But, the application did not direct Fisher to answer any questions regarding his moral character, which was also a prerequisite to licensure pursuant to KRS 318.040(b).

Keeping this in mind, the procedural history of this case reflects that KRS 335B *et seq.* has never been properly applied, and DHBC's legal misinterpretations were instead compounded. As indicated, DHBC argued at the administrative hearing and in its various post-hearing briefs that Fisher's prior felony convictions of sodomy and incest demonstrated that Fisher lacked "good moral character" within the meaning of KRS 318.040(1)(b) when he applied for his master plumber's license. DHBC reasoned that because "good moral character" is a prerequisite for granting a license and

because it had been unaware of Fisher's felony convictions prior to granting Fisher his license, Fisher's license was void *ab initio*. Alternatively, DHBC reasoned that Fisher's convictions, combined with the fact that Fisher had failed to disclose those convictions when he applied for his master plumber's license, equated to "such other unprofessional or dishonorable conduct of a character likely to deceive or defraud the public" (*i.e.*, the basis for revoking a license specified in KRS 318.064(5)).

For his part, Fisher argued that neither of the statutes cited by DHBC supplied any basis for revoking his master plumber's license. Fisher contended that KRS 318.040(1)(b) only contemplated that an *applicant* for a master plumber's license was required to have "good moral character" and that because he had already been granted a license, he was no longer an applicant and that requirement no longer applied to him. Fisher also argued that no statute or regulation, much less the application that he filled out to obtain his license, required him to divulge the fact of his convictions to DHBC. Accordingly, Fisher argued that he did not commit any dishonorable, unprofessional, or fraudulent act within the meaning of KRS 318.064(5) by withholding that information.

Moreover, Fisher argued that even if his conduct surrounding his felony convictions did indicate a lack of good moral character, he was nevertheless entitled to *keep* the license that had already been issued to him if he was able to demonstrate at the hearing that he had been rehabilitated. As authority for this proposition, Fisher cited KRS 335B.020(3) and the interpretation given to that section by Ky. OAG 80–388 (mentioned *supra*) and, in doing so, misinterpreted both. Fisher also entered into the record what he deemed to be evidence of his rehabilitation, which included the

testimony of the director of his sex offender treatment program, Teresa Bland, who stated that Fisher had successfully completed the sex offender treatment program and opined that Fisher posed only a low risk of reoffending.

After considering the evidence and arguments of the parties, the hearing officer entered an order recommending "that the determination of DHBC to terminate Mr. Fisher's Master Plumber license be rescinded and that his license be reinstated." In relevant part, his recommended order provided:

4. KRS 335B.020(3) cited by counsel for Mr. Fisher does not command DHBC to determine whether he is rehabilitated as the word "may" is used to describe the action that DHBC may take and thereby is permissive. There is no evidence that DHBC undertook such a determination and had no duty to do so.

5. KRS 318.040 establishes the standards an applicant for a Master Plumber license must meet. It does not provide for the revocation of a Master Plumber license once one is issued.

6. The "good moral character" provision contained in KRS 318.040(5) [sic [5]] is the basis of the action taken by DHBC to revoke the Master Plumber license issued to Mr. Fisher. The statute neither defines good moral character nor establishes a standard by which it can be ascertained.

7. Mr. Fisher testified that he felt he was of good moral character at the time he applied for a Master Plumber license

as, in his opinion, he was rehabilitated. Mr. [Robert] Carmickle [6] testified that he had a "negative" opinion of Mr. Fisher because of the nature of his crimes. Mr. [Tim] House testified that *he had no opinion as to whether Mr. Fisher was of good moral character* (emphasis added). Ms. Bland testified that Mr. Fisher was rehabilitated. The statute is unclear and "sounds as though good moral character may resemble beauty as it may be in the eyes of the beholder." The fact is that the term "good moral character" as contained in the statute is a subjective standard.

8. At no time was evidence submitted identifying who made the determination to terminate Mr. Fisher's Master Plumber license. Mr. House testified that he did not make the determination and "guessed that it was made by Legal." This is significant only in light of the fact that [the] hearing officer and the parties did not have the benefit of direct examination and/or cross-examination of the "decider" to ascertain the process by which the decision was made. Mr. Fisher's moral character was not clearly established during the hearing.

9. Mr. [Michael] Bennett [7] argues in his brief that DHBC would not have issued the license had it known of Mr. Fisher's convictions. However, neither the statute nor the application asks or requires that such information be disclosed by an applicant. Therefore, Mr. Fisher had no legal duty to reveal that

---

**5.** Taken in context, it is evident that the hearing officer meant to refer to KRS 318.040(1)(b). KRS 318.040(5) has no bearing upon this matter; it provides that "The examination papers [for a license as a master plumber or journeyman plumber] shall be preserved by the department for a period of one (1) year."

**6.** Robert Carmickle, who testified at the hearing, was employed by the Division as one of its compliance officers.

**7.** Michael Bennett was a staff attorney for the Department of Housing, Buildings and Construction and represented the agency at the administrative level.

information. There was no evidence of fraud or deceit by Mr. Fisher.

10. Clearly the statue [sic], KRS 318.340(5) [sic [8]] is unclear as to what constitutes good moral character. It neither specifies a point in time when the determination is to be made nor does it address the impact of the successful completion of a rehabilitation program by an applicant may have upon a determination. Significantly, it does not provide for the termination of a master plumber license. (For the sake of clarity, the statute should to [sic] be amended at the earliest possible opportunity to avoid confusion in the future.)

In sum, the hearing officer: 1) made no findings regarding whether Fisher had "good moral character" because, by his interpretation, KRS 318.040 was wholly inapplicable to license revocation proceedings; 2) analyzed KRS 335B.020(3) only to answer (in the negative) one limited question (i.e., whether DHBC had a mandatory duty to determine if an applicant for a master plumber's license was "rehabilitated" following a prior felony conviction); and 3) found that no statute, regulation, or other authority had imposed a duty upon Fisher to disclose any prior convictions when Fisher applied for the master plumber's license, and Fisher was therefore not guilty of any of the conduct described in KRS 318.064(5). Thus, by ignoring the greater substance of KRS 335B.020, and by eliminating KRS 318.040(1)(b) and KRS 318.064(5) as bases for either invalidating or revoking Fisher's license, the hearing officer concluded by process of elimination that Fisher had acquired a valid master plumber's license and was entitled to keep it.

In his subsequent review of this matter, DHBC's Commissioner rejected the hearing officer's decision and determined that Fisher's license warranted revocation. To that end, the Commissioner defined "good moral character" in the context of KRS 318.040 by adopting the definition of "good moral character" contained in BLACK'S LAW DICTIONARY, i.e., "an absence of proven conduct or acts which have been historically considered as manifestation of moral turpitude." BLACK'S LAW DICTIONARY, 693 (6th ed.1990). The Commissioner further held:

> The issue of "good moral character" is a significant factor considered when issuing licenses and a major concern as it relates to the issue of protection and safety for the public. Mr. Fisher's indictment and incarceration on incest charges speak for themselves. Applicants for plumbing licenses and those renewing plumbing licenses are required to meet all statutory qualifications to obtain and maintain a license. In the present case, being of "good moral character" was one of the statutory requirements for licensure. The Department, unaware of Mr. Fisher's indictment and incarceration on incest charges, erroneously issued a master plumbing license to Mr. Fisher and renewed his journeyman license.

. . .

## CONCLUSIONS

. . .

3. Pursuant to KRS 318.064, the Department may revoke or suspend any plumber's license issued upon proof that the licensee has:

(1) Knowingly violated the provisions of this chapter or the Kentucky State Plumbing Code, or the rules and regulations of the Department[.]

. . .

8. See supra, note 5. "KRS 318.340" is not an existing statute.

4. Mr. Fisher knowingly violated the provisions of KRS Chapter 318 when he renewed his journeyman license and applied for his Master contractor license without meeting all statutory requirements for licensure.

In sum, the Commissioner found: 1) nothing precluded DHBC from re-examining Fisher's master plumber's license application and determining, after granting him a license, that Fisher had failed to meet the statutory prerequisites for acquiring that license; 2) therefore, KRS 318.040(1)(b) did apply in this matter; 3) the "good moral character" requirement of that provision was capable of being defined; and 4) Fisher's felony convictions demonstrated that Fisher lacked good moral character.

Contrasted with what had been previously argued by the parties, however, the Commissioner also found that Fisher's master plumber's license had actually been revoked on the basis of KRS 318.064(1), rather than KRS 318.064(5). And, as to what was regarded as Fisher's "knowing violation" of the provisions of KRS 318 *et seq.*, the Commissioner's order is susceptible of either of the two following interpretations: 1) Fisher violated KRS 318.040(1)(b) when he applied for a master plumber's license because he was aware of his prior felony convictions, and was therefore aware that he lacked "good moral character" at that time; or 2) when Fisher failed to disclose the fact of his convictions to DHBC when he applied for his master plumber's license, Fisher knowingly violated a provision of KRS Chapter 318, or some other law relating to it, which re-

quired him to disclose that information to DHBC for its consideration.

Pursuant to KRS 318.066(2) and 13B, Fisher then filed an appeal with the Franklin Circuit Court contesting the Commissioner's order. There, Fisher argued that KRS 318.040, 318.064(5) *and* 318.064(1) provided no basis for revoking his license.[9] For the same reasons as before, DHBC argued that Fisher's failure to disclose his felony sex offense convictions in his application for his license either rendered his license void *ab initio* or supplied a valid basis for revocation.

Thereafter, in its own review, the circuit court also determined that KRS 318.040 applied to Fisher after he had acquired his license:

> [Fisher's] primary argument is that, because he is not an applicant, KRS 318.040(1) is inapplicable to him. Respondent asserts that [Fisher's] license is void *ab initio* because he failed the mandatory requirements at the time he received a license.
>
> . . .
>
> [Fisher's] argument conforms to a literal reading of KRS 318.040(1). However, such an interpretation assumes that the obtained license is valid the instant it is issued despite an applicant's failure to meet the necessary requirements. The Court finds that this interpretation would both effectuate an absurd result and fail to apply the statute as the legislature intended. If [Fisher's] interpretation were taken to its logical end, applicants could receive a valid license, either through the fault of DHBC or through an applicant's own deception,

**9.** On appeal before this Court, Fisher does not reiterate his argument presented to the circuit court that the statutory requirement that an applicant be of "good moral character" is unconstitutionally vague. This argument would nevertheless be non-reviewable be-

cause Fisher failed to comply with the requirements set forth in KRS 418.075(1) regarding notification of the Attorney General in any proceeding where the constitutionality of a statute is in question.

without meeting all mandatory requirements. The Court finds that the legislature could not have intended such a result, but rather desired that no person who failed any of these requirements could obtain a valid license. Therefore, the Court understands this statute to declare void any license granted to a person who fails to satisfy any qualification listed in KRS 318.040(1).

The circuit court went on to hold that Fisher's prior felony convictions constituted substantial evidence of Fisher's bad moral character at the time of his application; that Fisher's evidence of his subsequent rehabilitation was not compelling evidence to the contrary; and that Fisher's bad moral character, at the time of his application, effectively rendered his resulting license *void ab initio*.

This appeal followed.

### ANALYSIS

It is apparent from the procedural history of this matter that the action DHBC sought to take against Fisher in this matter was not, from its point of view, the revocation of a license which had been lawfully issued to Fisher. Rather, DHBC's action rested upon the notion that it had acted without authority when it had issued Fisher his license because Fisher had failed to meet one of the essential prerequisites for licensure specified in KRS 318.040. Thus, DHBC's action is more properly characterized as one for the rescission or cancellation of a void license by means of a collateral attack. Nothing prohibited DHBC from initiating and prosecuting this form of action. *See, e.g., Becker v. Yeary*, 278 S.W.2d 632, 634 (Ky. 1955) ("Appellant's final contention that

this is a collateral attack on an administrative order [issuing a permit] requires little discussion ... But, even if the attack were collateral, it would be permissible in view of the fact that we have found the issuance void."); *see also Maxwell Co. v. N.L.R.B.*, 414 F.2d 477, 479 (6th Cir.1969):

> An administrative agency, charged with the protection of the public interest, is certainly not precluded from taking appropriate action to that end because of mistaken action on its part in the past ... Nor can the principles of equitable estoppel be applied to deprive the public of the protection of a statute because of mistaken action or lack of action on the part of public officials."

(Internal citations omitted.)

 We agree with DHBC that the dispositive issue in this matter is whether it acted in excess of its authority when it issued Fisher a master plumber's license. We disagree, however, that the proper way to have addressed this issue was through an after-the-fact assessment of Fisher's moral character. Instead, the proper way to have addressed this issue should have been—and continues to be—whether DHBC's failure to determine whether Fisher had been "successfully rehabilitated" *prior* to issuing Fisher a master plumber's license deprived it of the authority to issue Fisher a valid master plumber's license.[10]

 DHBC is an administrative agency, and administrative agencies derive their power and authority solely from delegations of power as set forth in statutes enacted by the General Assembly. 4A William B. Bardenwerper et al., *Kentucky Practice—Methods of Practice* § 19:2 (4th

---

10. An appellate court may affirm the decision of a lower tribunal under an alternate theory so long as it is supported by the record. *Commonwealth, Natural Resources and Envi-* *ronmental Protection Cabinet v. Neace*, 14 S.W.3d 15, 20 (Ky.2000); *see also Kentucky Farm Bureau Mut. Ins. Co. v. Gray*, 814 S.W.2d 928, 930 (Ky.App.1991).

ed.2011). An administrative agency, as a purely statutory creation, possesses no inherent authority and derives all of its rule-making authority from legislative grant. *Brown v. Jefferson County Police Merit Bd.*, 751 S.W.2d 23, 25 (Ky.1988). *See also Department for Natural Res. And Environmental Protection v. Stearns Coal & Lumber Co.*, 563 S.W.2d 471, 473 (Ky.1978) (stating that "[i]t is fundamental that administrative agencies are creatures of statute and must find within the statute warrant for the exercise of any authority which they claim [ ]"). Furthermore, an administrative agency may neither assume power nor adopt regulations in the absence of an express statutory enactment. *Lovern v. Brown*, 390 S.W.2d 448, 449 (Ky. 1965). Where reasonable doubt exists concerning the proper scope of an administrative agency's power, the question must be resolved against the agency to limit its power. *Board of Education of City of Newport v. Scott*, 189 Ky. 225, 227, 224 S.W. 680, 681 (1920).

▉ According to the record, DHBC's internal policy is to effectively presume that no one applying for a master plumber's license has had any kind of criminal conviction that would fall within the definition of KRS 335B.010(4). Thus, by its own internal policy, DHBC has exercised its authority to issue and renew licenses to convicted felons, but has ignored the condition placed upon that authority by KRS 335B.020(3), *i.e.*, the requirement that DHBC first make a determination that the convicted felon "has been successfully rehabilitated." An administrative agency such as DHBC cannot by its own internal policy or other form of action limit the effect of a statute. KRS 13A.130(1)(b). Its internal policy was therefore null and void. KRS 13A.130(2).

DHBC has wide regulatory authority to determine methodologies for screening and monitoring the criminal backgrounds of its applicants and licensees; it also has wide regulatory authority to define a procedure for demonstrating that it has determined that an applicant or licensee convicted of an otherwise disqualifying offense has been successfully rehabilitated, per KRS 335B.020(3). However, while DHBC's ultimate determination of whether such applicants or licensees have been "successfully rehabilitated" calls for DHBC's discretion, DHBC's duty to make that determination and to do so prior to issuing or renewing licenses is mandatory, ministerial, and exists for obvious public safety reasons. As an agency charged with promoting public safety, DHBC has a continuing and affirmative duty to ensure that its applicants and licensees meet and have met all statutory requirements for licensure. That duty cannot be waived or abdicated.

▉ Fisher was convicted of three crimes within the meaning of KRS 335B.010(4). Consequently, DHBC was required to determine that Fisher had been successfully rehabilitated before a license could be issued to Fisher. Without making that prior determination, DHBC lacked authority to issue Fisher a license, just as it lacked statutory authority to issue a license to a person less than eighteen years of age. To the same effect, *see, e.g., Pearl v. Marshall*, 491 S.W.2d 837 (Ky.1973) (finding that Alcoholic Beverage Control Board's authority to issue a license was conditioned upon the Board first making certain statutorily mandated findings, and that the Board exceeded its authority by issuing the license in question without first making those findings).

Moreover, we find no authority that would have allowed DHBC to retroactively validate a void license through a *subsequent* determination of rehabilitation. The object of DHBC's enabling legislation in requiring a license for the privilege of

plumbing—like the object of any other legislation requiring a license for the privilege of carrying on any other business—is to prevent improper persons from engaging in that particular business, and to regulate that particular business in the interest of public morals, health, and safety. *Board of Education of Ferguson Independent Graded School Dist. v. Elliott,* 276 Ky. 790, 125 S.W.2d 733, 735 (1939). Allowing DHBC to license a convicted felon first, and then determine whether it was safe to do so on a later date, would defeat the purpose of DHBC's enabling legislation.

Accordingly, Fisher's master plumber's license is void. To be considered a master plumber, Fisher must reapply for a new, original license. And, before granting him such a license, DHBC must determine that Fisher has been "successfully rehabilitated" and must further determine that he has met all of the other statutory prerequisites for licensure.

### CONCLUSION

For the reasons stated above, we affirm.

ALL CONCUR.